BARRY R. EICHEN
EICHEN LEVINSON & CRUTCHLOW, LLP
40 Ethel Road
Edison, New Jersey 08817
(732) 777-0100
Attorneys for Plaintiff

| | | |
|---|---|---|
| | : | **UNITED STATES DISTRICT COURT** |
| DEBORAH FELLNER, | : | **DISTRICT OF NEW JERSEY** |
| | : | |
| Plaintiff | : | Civil Action 2:06-cv-00688-DMC-MF |
| | : | |
| vs. | : | |
| | : | |
| TRI-UNION SEAFOODS, L.L.C., | : | PLAINTIFF'S OPPOSITION TO |
| d/b/a CHICKEN OF THE SEA, | : | DEFENDANT'S 12(b)(6) MOTION |
| | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Barry R. Eichen
EICHEN LEVINSON & CRUTCHLOW
40 Ethel Road
Edison, New Jersey 08817
(732) 777-0100

ATTORNEYS FOR PLAINTIFF DEBORAH FELLNER

# TABLE OF CONTENTS

INTRODUCTION & FACTUAL BACKGROUND ........................................................2

    I.     THE COMPLAINT ...........................................................................2

         A.  Plaintiff's Complaint and Legal Theory Are Not As Novel As Defendant
            Contends .................................................................................2

         B.  Alleged "Over-Consumption" and "Abnormal" Use of Tri-Union Seafood .........3

    II.    METHYLMERCURY IN SEAFOOD .......................................................4

LEGAL ARGUMENT ...............................................................................6

    I.     LEGAL STANDARDS FOR A 12(b)(6) MOTION TO DISMISS .........................6

    II.    DEFENDANT'S CONTENTIONS OF "OVER-CONSUMPTION" AND
          "ABNORMAL" USE OF TRI-UNION TUNA ARE WEIGHT-OF-EVIDENCE
          ARGUMENTS AND AFFIRMATIVE DEFENSES THAT HAVE NO PLACE IN
          A MOTION TO DISMISS...................................................................7

    III.   DEFENDANT'S "OVER-CONSUMPTION" AND "ABNORMAL" USE
          ANALOGIES AND CASELAW ARE INAPPOSITE, AND NOTHING
          SUPPORTS THE PROPOSITION THAT LAY CONSUMERS KNEW OF THE
          PRESENCE, LET ALONE RISKS, OF MERCURY IN TRI-UNION'S TUNA
          PRODUCTS ..................................................................................8

    IV.   NEW JERSEY LAW IMPOSES A DUTY TO WARN FOR PRODUCTS THAT
          ARE DANGEROUS WITH PROLONGED USE ....................................10

    V.    THERE IS NOTHING TO SUPPORT THE CONTENTION THAT THE
          PRESENCE OF HARMFUL MERCURY IN TRI-UNION'S TUNA PRODUCTS
          WAS OR IS A "COMMONLY KNOWN DANGER" ........................10

    VI.   WHETHER THE HARMFUL MERCURY CONTAINED IN TRI-UNION'S
          TUNA PRODUCTS IS "NATURALLY OCCURRING" HAS NO BEARING ON
          THE DEFENDANT'S DUTY TO WARN ..........................................11

    VII.  COMPELLING PUBLIC POLICY CONSIDERATIONS WILL BE HARMED IF
          THE COMPLAINT IS DISMISSED AND TRI-UNION IS SHIELDED FROM
          LIABILITY FOR FAILURE-TO-WARN OF HARMFUL MERCURY IN ITS
          TUNA PRODUCTS .......................................................................14

CONCLUSION ....................................................................................16

# TABLE OF AUTHORITY

## CASES

Scheuer v. Rhodes, 416 US 232 (1974) ...................................................................6

Unger v. National Residents Matching Program, 928 F.2d 1392, 1400 (3d Cir. 1991) ................6

Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).......................................................6

Hishon v. King & Spalding, 467 US 69, 73 (1984)..........................................................................6

Conley v. Gibson, 355 US 41, 45-46 (1957) ....................................................................................6

Brown v. Phillip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001).....................................................6

Dilworth v. Metropolitan Insurance Co., 418 F.3d 345, 354 (3d Cir. 2005)...................................7

Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408 (3d Cir. 2002) .............................................7

In re Adams Golf, Inc. Securities Litigation, 381 F.3d 267 (3d Cir. 2004).....................................7

Torsiello v. Whitehall Laboratories, 165 NJ Super. 311, 398 A.2d 132 (NJ App. 1979) ..............9

Koster v. Scotch Associates, 640 A.2d 1225 (NJ App. 1993)........................................................12

Hollinger v. Shoppers Paradise of New Jersey, 340 A.2d 687 (NJ Super. 1975).........................12

Sofman v. Denham Food Services, Inc., 37 NJ 304, 181 A.2d 168 (NJ 1962) .............................13

## STATUTES AND REGULATIONS

Fed. R. Civ. P. 12(b)(6)...................................................................................................................1

New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 et seq............................................2

New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58C-1 et seq. ...................................2

Uniform Commercial Code ("UCC") 2-314....................................................................................1

## MISCELLANEOUS

Complaint ("Exhibit A")...................................................................................................................2

Complaint:  People of the State of California v. Tri-Union Seafoods, LLC, et al. ("Exhibit B")...2

Michael T. Bender,  FDA's Failure to Protect Children From Exposure to Mercury in Albacore "White" Canned Tuna, Mercury Policy Project, June 19, 2003 ("Exhibit C") ...............................5

Bender & Williams, FDA Fails to Protect the Public From High Mercury Levels in Seafood, Mercury Policy Project and California Communities Against Toxics, April, 2000 ("Exhibit D") . 6

People's Opposition to Defendant's Motion for Judgment on the Pleadings ("Exhibit E") ...........5

Covington & Burling Letter ("Exhibit F")......................................................................14

Covington & Burling Memorandum ("Exhibit G").........................................................14

FDA Food Advisory Committee on Methylmercury:  Statement of the Center for Science in the Public Interest ("Exhibit H"). ...........................................................................................4

Burger & Gochfeld, Mercury in Canned Tuna:  White vs Light and Temporal Variation ("Exhibit I") ...........................................................................................................5

Plaintiff respectfully submits this Memorandum of Law in Opposition to the Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the Complaint. The claims contained in Plaintiff's Complaint are sufficient as a matter of law, and should not be dismissed.

## INTRODUCTION & FACTUAL BACKGROUND

### I. THE COMPLAINT

Plaintiff Deborah Fellner brought suit against the Defendant, alleging violations of the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58C-1 *et seq*., the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq*., and common law fraud, for caning and distributing tuna containing harmful mercury compounds, yet failing to warn and disclose the harms associated with mercury in its tuna products. Complaint ("Exhibit A").

#### A. Plaintiff's Complaint and Legal Theory Are Not As Novel As Defendant Contends

Plaintiff's Complaint and legal theory are not as novel as Tri-Union contends – the Attorney General of the state of California has filed a similar suit (hereinafter "California AG suit") against the Defendant, seeking injunctive relief and civil penalties to remedy the Defendant's failure to warn of harmful mercury in its tuna products. The California AG suit alleges unfair and fraudulent business practices in violation of that state's equivalent of the NJCFA, and also seeks relief under provisions of that state's Safe Drinking Water and Toxic Enforcement Act that are similar to the NJPLA. Complaint: *People of the State of California v. Tri-Union Seafoods, LLC, et als.* ("Exhibit B").

### B.    Alleged "Over-Consumption" and "Abnormal" Use of Tri-Union Seafood

Defendant contends that it is not liable for Plaintiff's injuries because of what the Defendant characterizes as "abnormal consumption" of its tuna products.  Defendant compares the Plaintiff's consumption of its tuna products to overindulgence in alcohol, fatty fast foods, or candies.  Setting aside that whether plaintiff's consumption was "abnormal" is a question of fact for the jury, or that contra the Defendant's long history of promoting its tuna products as health foods, Tri-Union is now curiously doing an about face and likening its tuna to harmful products whose inherent risks are well known. The Defendant's examples are inapposite and akin to comparing apples and oranges.

The food products cited by the Defendant carry risks that are well known, that are inherent in the food product itself as opposed to an undisclosed extraneous product such as mercury, and whose inherent risks should they materialize could rightly be beyond a remedy *for those particular risks*.  Unlike such scenarios, Plaintiff does not seek recovery for harm arising from a well-known risk that is inherent in canned tuna.  Instead, Plaintiff seeks recovery for harm caused by an undisclosed risk – that of mercury contained in Tri-Union's tuna.

Finally, Defendant's characterization of Plaintiff's consumption of tuna as "abnormal" and at "an absurd rate" because Plaintiff ate "almost exclusively canned tuna for five years" is based on an erroneous interpretation of a poorly drafted Complaint. Paragraph 7 of Plaintiff's Complaint reads "During the period 1999 through 2004, Plaintiff's diet consisted almost exclusively of Tuna Products canned and distributed by the Defendant." Plaintiff's diet did not consist exclusively of canned tuna; but rather, the tuna products Plaintiff consumed were almost exclusively the Defendant's products.

Plaintiff's tuna consumption during the years indicated, consisted of only one can of tuna per day.

## II.    METHYLMERCURY IN SEAFOOD

The federal food-safety regulatory system is exceptionally fragmented on the issue of methylmercury in seafood.  The FDA, the Environmental Protection Agency ("EPA"), and the Agency for Toxic Substances and Disease Registry ("ATSDR"), all have levels for human exposure to methylmercury from seafood.  None of them agree on what level of mercury represents a threat to consumers.  The FDA established an "Action Level" of 1 part per million ("p.p.m.") for methylmercury in commercial food, which is the least stringent of the three agencies.

More importantly for purposes of the instant matter, the FDA's 1 p.p.m. Action Level is only an informal enforcement policy – it is not a regulatory standard[1], it is *not legally binding* on the FDA or on seafood companies, and it does nothing to prevent seafood companies from selling heavily contaminated canned tuna to consumers.  FDA Food Advisory Committee on Methylmercury:  *Statement of the Center for Science in the Public Interest*, at 2-4, and 6. ("Exhibit H").  The Center for Science in the Public Interest explained the difference between an FDA "Action Level" and a binding regulation as follows:

> At best, an action level is a yellow light for industry, signaling when FDA might consider a food to be adulterated.  But each time FDA brings a case based on an action level, it must prove the threat to public health caused

---

[1]  Indeed, scientists and consumer safety organizations have been lobbying the FDA for decades to promulgate a regulation containing an enforceable standard on methylmercury, but to no avail. Exhibit H, at 6-9.  Of course, the fact that the FDA has not promulgated an enforceable regulatory standard on methylmercury means that the Defendant's FDA preemption argument is without merit – there can be neither field nor conflict preemption in the absence of regulatory action occupying the field or with which state laws might conflict.

by the seafood in question. A regulatory limit, by contrast, is a red light, signaling to industry that it cannot sell seafood exceeding that limit. It is a legally enforceable limit that is binding on the agency and on the industry.

Exhibit H, at 8. As such, and as explained in Point II, infra, the FDA "Action Level" is a weak prop upon which to lean when making a preemption argument.

That the FDA's Action Level is not legally binding is reflected in the fact that tuna cans found in grocery stores frequently contain more than the FDA's 1 p.p.m. mercury. Recently, the Environmental & Occupational Health Sciences Institute ("EOSHI") conducted a study on canned tuna found on the shelves of New Jersey stores. The study revealed that 15% of the tuna samples contained more mercury than the FDA's 1 p.p.m. Burger & Gochfeld, Mercury in Canned Tuna: *White vs Light and Temporal Variation*, Environmental Research Journal, 2004 Nov, 96(3) 239-249, at 244 ("Exhibit I"). The EOSHI study also found that women who ate three or more tuna servings per month had a mercury level four times higher than those who did not. Exhibit E, at 239.

Another independent study, that examined canned tuna found on supermarket shelves in Vermont, revealed that the amounts of mercury in white albacore canned tuna had average mercury levels four-times higher than in light tuna, and that 6% or more of the white albacore tuna cans contained mercury at or above the FDA's 1 p.p.m. Michael T. Bender, *FDA's Failure to Protect Children From Exposure to Mercury in Albacore "White" Canned Tuna*, Mercury Policy Project, June 19, 2003, at 3, ("Exhibit C").

It should also be noted that, in addition to its failure to enact an enforceable regulatory standard on mercury in seafood, the FDA has drastically cut back on its seafood mercury monitoring. E.g.; a study by the Mercury Policy Project in 2000 found that the FDA sampled only 13 cans of tuna for mercury content in 1995, and none in

1994, 1996, 1997, or 1998.  Indeed, by its own admission, the FDA no longer even conducts a mercury monitoring program on tuna.  Bender & Williams, *FDA Fails to Protect the Public From High Mercury Levels in Seafood*, Mercury Policy Project and California Communities Against Toxics, April, 2000, at 3, 8, and footnote 23 ("Exhibit D"); and Exhibit H, at 11.  Nonetheless, even the scant FDA data revealed that 4% of the FDA's own tuna samples exceeded the agency's 1 p.p.m. Action Level.  Exhibit D, at 8.

## LEGAL ARGUMENT

### I.      LEGAL STANDARDS FOR A 12(b)(6) MOTION TO DISMISS

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded allegations and view them in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 US 232, 236 (1974).  A court must also accept as true any and all reasonable inferences derived from those facts.  Unger v. National Residents Matching Program, 928 F.2d 1392, 1400 (3d Cir. 1991).  Moreover, it is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).

The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff can prove any set of facts in support of the asserted claims that would entitle the plaintiff to relief.  Hishon v. King & Spalding, 467 US 69, 73 (1984).  A complaint may not be dismissed "*unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*"  Conley v. Gibson, 355 US 41, 45-46 (1957).  See, also, Brown v. Phillip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001).

**II.    DEFENDANT'S CONTENTIONS OF "OVER-CONSUMPTION" AND "ABNORMAL" USE OF TRI-UNION TUNA ARE WEIGHT-OF-EVIDENCE ARGUMENTS AND AFFIRMATIVE DEFENSES THAT HAVE NO PLACE IN A MOTION TO DISMISS**

Tri-Union claims that Plaintiff's prolonged use of its tuna products amounted to "over-consumption" and was thus "abnormal."  Based on those conclusory assertions and characterizations, which Plaintiff strongly disputes, Tri-Union seeks to dismiss the Complaint.

As a threshold matter, it should be noted that Defendant is making a weight of evidence argument – whether Plaintiff "over-consumed" Tri-Union's tuna products, or whether such consumption was "abnormal," are questions of fact that hinge on whether Plaintiff's consumption was reasonable.

Weight of evidence arguments and attendant questions of fact are not properly disposed of in a Fed. R. Civ. P. 12(b)(6) motion, but are for a jury to decide.  <u>Dilworth v. Metropolitan Insurance Co.</u>, 418 F.3d 345, 354 (3d Cir. 2005) (issues such as reasonableness are questions of fact that ought be presented to a jury).  Similarly in <u>Stecyk v. Bell Helicopter Textron, Inc.</u>, 295 F.3d 408 (3d Cir. 2002), the Third Circuit addressed and disposed of a defendant's weight of evidence argument during motion practice by holding that such matters are "properly the subject of cross examination" during trial.  <u>Id</u>. at 413.

In addition to an improper weight of evidence argument, Defendant is also advancing an affirmative defense with its "over-consumption" and "abnormal" use contentions.  An affirmative defense has no place in the pleading stages to dismiss a claim.  In <u>In re Adams Golf, Inc. Securities Litigation</u>, 381 F.3d 267 (3d Cir. 2004), the Court reversed the trial judge's grant of a motion to dismiss, on grounds that the motion

involved affirmative defenses as to negative causation.  The Third Circuit held that although a defendant may well be able to prove a negative causation theory, causation is an affirmative defense and "an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)."  Id. at 277.  In light of the preceding, the Defendant's "over-consumption" and "abnormal" use arguments do not provide a basis for dismissal.

### III.   DEFENDANT'S "OVER-CONSUMPTION" AND "ABNORMAL" USE ANALOGIES AND CASELAW ARE INAPPOSITE, AND NOTHING SUPPORTS THE PROPOSITION THAT LAY CONSUMERS KNEW OF THE PRESENCE, LET ALONE RISKS, OF MERCURY IN TRI-UNION'S TUNA PRODUCTS

In further support of its "over-consumption" and "abnormal" use arguments, Tri-Union likens its tuna products to candy, alcohol, fried onion rings and other fattening fast foods that carry well known risks unless consumed in moderation.  The problem with the Defendant's analogies is that Plaintiff is not seeking recovery for any harm caused by a well known and inherent risk of tuna[2], but is instead seeking damages stemming from an undisclosed risk – mercury in Tri-Union's tuna products.

There is nothing problematic if one who overindulges in Snickers bars or other candies is barred from suing the manufacturer for dental bills.  Nor would it be controversial to bar one who subsists on Big Macs from suing McDonald's for weight gain, obesity, or high cholesterol.  However, it would *not* be problematic to permit recovery if the harm which materialized was not amongst the known risks inherent in the product – e.g.; if rather than rotting teeth or clogged arteries, Snickers led to schizophrenia or sterility, or Big Macs led to malignant brain tumors.

---

[2] Plaintiff at present is aware of no known dangers of mercury-free tuna, but would welcome any information from Tri-Union during discovery on the dangers of mercury-free tuna, whether commonly known by the general public or not.

Plaintiff does not allege that she was harmed by the tuna itself – a food product that Tri-Union has been lauding and marketing for decades as exceptionally healthy fare. Instead, Plaintiff complains of the harmful *mercury* found in Tri-Union's tuna products. Mercury, whose presence and attendant risks Tri-Union not only failed to reveal, but whose disclosure the Defendant and other seafood manufacturers actively resisted.

In Torsiello v. Whitehall Laboratories, 165 NJ Super. 311, 398 A.2d 132 (NJ App. 1979), the plaintiff suffered hemorrhaging after prolonged daily use of aspirin, and sought damages against the manufacturer for failure to warn of the dangers inherent in such use. Reversing the trial judge's dismissal of plaintiff's claims, the Appellate Division held that it was for a jury to decide whether the dangers of prolonged use were generally known and understood by lay consumers:

> As to the matter of lay knowledge, we see no justification at all in this record or in anything appropriately subject to judicial notice for the trial judge's assumption that the danger of prolonged aspirin use is commonly appreciated by laymen. Plaintiff, for one, did not know and there was no suggestion in this record that he should have known. It was clearly for the jury to determine whether in fact that danger is, in Restatement verbiage, as "generally known and understood" among lay consumers as it apparently is in medical and pharmaceutical circles.

Id. at 137. Similarly in the instant matter, it would be facetious to contend that Plaintiff knew or should have known the dangers of the (undisclosed) mercury contained in Tri-Union's tuna. Indeed, there is nothing to support the proposition that the lay public is generally aware of even the *presence* of harmful mercury in Tri-Union's tuna, let alone evidence that the lay public is generally aware of the mercury-related dangers of prolonged consumption of Tri-Union's tuna products[3]. In light of the preceding, it is

---

[3] Even if we assume, arguendo, that such evidence exists, as explicated in Point II, supra, that would simply put us in the realm of weight of evidence and affirmative defenses, which are properly within the purview of the jury.

clear that Tri-Union's "over-consumption" and "abnormal" use contentions are not proper grounds for dismissal.

## IV.   NEW JERSEY LAW IMPOSES A DUTY TO WARN FOR PRODUCTS THAT ARE DANGEROUS WITH PROLONGED USE

Defendant iterates its conclusory (and irrelevant for purposes of the instant motion – see, Point II, supra) assertion that Plaintiff consumed Tri-Union's tuna products "at an absurd rate," and erroneously adds that New Jersey law does not impose a duty to warn for products that are dangerous only with prolonged use. Defendant's brief, p. 10. Defendant's statement of New Jersey's law is inaccurate, and is belied by the New Jersey Appellate Division's <u>Torsiello</u>, which held as follows in regards to a manufacturer's duty to warn of dangers arising from prolonged use:

> if the consuming lay public is generally unaware of this inherent danger, then the product is unreasonably dangerous if sold without an accompanying warning as to that specific risk of prolonged use.

398 A.2d at 137. Defendant, which did not even disclose the presence of potentially harmful mercury in its tuna products, has offered nothing in support of the proposition that the consuming public knew of the existence of mercury in Tri-Union's tuna products, let alone knew of the dangers of prolonged consumption of Tri-Union's seafoods. As such, this ground for dismissal must also fail.

## V.   THERE IS NOTHING TO SUPPORT THE CONTENTION THAT THE PRESENCE OF HARMFUL MERCURY IN TRI-UNION'S TUNA PRODUCTS WAS OR IS A "COMMONLY KNOWN DANGER"

Defendant asserts that "the manufacturer of a product has a duty to warn about any risk relating to the product that it knows or ought to know, *Feldman v. Lederle Labs.*, 97 N.J. 429, 434, 479 A.2d 374 (1984), unless the risk and the way to avoid it are

obvious. *Mathews v. Univ. Loft Co.* 387 N.J.Super. 349, 358, 903 A.2d 1120 (App.Div.)"
Defendant's brief, p. 10.

Plaintiff agrees with the contentions described in the preceding paragraph. Plaintiff also submits that the assertions in the preceding paragraph are inapposite and irrelevant for purposes of the case at bar. There is no evidence to support the contention that the presence of harmful mercury in Tri-Union's tuna products was "obvious," "common knowledge," or that awareness of such a danger was so widespread that every individual should have known of its existence.

Furthermore, and as with Defendant's assertions as to Plaintiff's alleged "over-consumption" or "abnormal" use of Tri-Union's tuna products, whether the risk of mercury in Tri-Union's mercury was a "commonly known danger " is a question of fact for a jury to decide, and one that has no place in a 12(b)(6) motion. Dilworth, 418 F.3d at, 354; In re Adams Golf, Inc. Securities Litigation, 381 F.3d at 277; and Torsiello, 398 A.2d at 137.

It is incongruous that Tri-Union should be making this argument, considering how strongly it and other seafood manufacturers resisted all attempts at requiring the placement of a mercury warning or notice on its tuna products. In light of the preceding, Defendant's "commonly known danger" argument also fails, and dismissal should not be granted on such grounds.

## VI.   WHETHER THE HARMFUL MERCURY CONTAINED IN TRI-UNION'S TUNA PRODUCTS IS "NATURALLY OCCURRING" HAS NO BEARING ON THE DEFENDANT'S DUTY TO WARN

Defendant asserts that the harmful mercury in Tri-Union's tuna products is naturally occurring, and contends that, as a result, it should not be held liable for its

failure to warn. Assuming arguendo that a Rule 12(b)(6) motion is the proper means for deciding a question of fact such as whether or not methylmercury occurs naturally in tuna, which it is not, it should be noted that Defendant simply asserts that scientific conclusion without adding anything in support thereof. Defendant's brief, pg. 12.

More importantly, the Defendant is mistaken as to law on the issue of contaminants. In Koster v. Scotch Associates, 640 A.2d 1225 (NJ App. 1993), the Court iterated that the well established gist of Uniform Commercial Code ("UCC") 2-314 is that "[a] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The Koster Court went on to reject an argument that serving a meal in a restaurant is not a "sale" under the UCC, and held that the legislature's enactment of the UCC effectively repealed caselaw distinguishing between food sold in a supermarket and food sold in a restaurant, and concluded:

> The common law has always imposed a high standard of care on the preparation and serving of food. From very early times, the common law imposed an extraordinary duty on purveyors of food and drink to provide wholesome, pure products. (citations omitted). In fact, it was from these cases that the doctrine of strict liability arose. (citations omitted). Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)* (1960) 69 Yale L.J. 1099, 1103, 1114 [tracing doctrine back to 1266 and an English statute prohibiting victualers and cooks from selling "corrupt" food for immediate consumption].

640 A.2d at 1227-1228.

Defendant mistakenly relies on Hollinger v. Shoppers Paradise of New Jersey, 340 A.2d 687 (NJ Super. 1975). In Hollinger, the plaintiff bought *raw* pork chops from the Defendant, from which he contracted trichinosis. The Court held that the selling of

trichinous pork is not the same as selling unwholesome foods because the plaintiff had

failed to properly cook the pork:

> Raw pork is a unique product in that it may contain an inherent defect
> (trichinae) which is undetectable by the seller but curable through
> preparation by the consumer. The fact that there is a danger of illness as a
> consequence of eating uncooked or underdone pork is a matter of common
> knowledge which courts in other jurisdictions have recognized and of
> which this court takes notice.

340 A.2d at 692. Unlike raw pork, Tri-Union's canned tuna is prepared by the Defendant

and sold ready-to-eat, without any expectation that the consumer would thoroughly cook

the tuna before consumption, and in so cooking remove the harmful mercury[4].

It should also be noted that the <u>Hollinger</u> Court made it clear that a claim such as

that advanced by Plaintiff in the instant matter would not be precluded:

> in the instant case, if plaintiffs show that the pork was not reasonably fit
> for eating when it was sold and that the defect therein caused their injuries,
> they may recover by reason of either breach of warranty or strict liability
> theories.

340 A.2d at 692. Plaintiff's claim is that the mercury in Tri-Union's tuna was harmful

when the tuna was sold, that there was nothing she could have done by way of food

preparation to cure the defect; and that, coupled with the Defendant's failure to warn,

caused her injuries.

Defendant's reliance on <u>Sofman v. Denham Food Services, Inc.</u>, 37 NJ 304, 181

A.2d 168 (NJ 1962), is similarly misplaced. In <u>Sofman</u>, the Court merely declined to

extend to cafeterias protections contained in prior caselaw, which shielded restaurants

from liability on grounds that their meals were a service rather than a sale of goods. <u>Id</u>.

The Court's reasoning had nothing to do with whether "frankfurters consist of highly

---

[4] Even if cooked, there is no clear evidence that cooking could remove the mercury in Tri-Union's tuna.

processed meat, [and] an average consumer would not expect a 'piece of bone or gristle' to be present in the processed meat." Defendant's Brief, p. 14. Instead, the Sofman Court simply held that the legislature's enactment of the UCC, and section 2-314 thereof, overturned prior caselaw on meals being "service" or "sale of goods" – henceforward, restaurant meals are "goods" under the UCC. 181 A.2d at 170. In light of the preceding, Plaintiff may recover under either breach of warranty or strict liability theories.

## VII. COMPELLING PUBLIC POLICY CONSIDERATIONS WILL BE HARMED IF THE COMPLAINT IS DISMISSED AND TRI-UNION IS SHIELDED FROM LIABILITY FOR FAILURE-TO-WARN OF HARMFUL MERCURY IN ITS TUNA PRODUCTS

> There is often a gap between how the fish-consuming public and the agencies responsible for advisories perceive risk. … The public views eating fish as a less serious hazard than does the scientist or environmental manager, but more seriously than some regulators.

Exhibit I, at 246. As seen in the Introduction, Point I.B, supra, and Exhibits F and G, at times there might be unsavory reasons for some regulators' lessened risk perception.

Tri-Union contends that fish are an excellent source of omega-3 fatty acids, which is a good element that might protect against heart diseases. That may well be true, and Plaintiff is not contesting that proposition in this brief. However, we also know that Tri-Union's tuna is a source of mercury, which is a bad element that might harm or even kill.

If Tri-Union had warned of mercury in its tuna products, Plaintiff and other consumers would have been able to make informed decisions as to their eating habits. They could have weighed the benefits of, e.g., omega-3 fatty acids, against the potential downside of ingesting too much mercury, and arranged their eating habits accordingly. Tri-Union failed to warn of mercury, and that failure deprived Plaintiff and others of

information necessary for making a meaningful choice. Because of Tri-Union's failure to warn, Plaintiff was unable to make an informed decision regarding her level of tuna consumption, and is now suffering the consequences.

Tri-Union also contends that the Complaint should be dismissed because doing so would prevent "a decrease in consumption of fish in the general population." Defendant's brief, pg. 18. It should be noted that Tri-Union is not a disinterested public interest organization or consumer advocate, but a commercial enterprise that sells fish and fish products for profit – fish whose decreased consumption Tri-Union claims as grounds for dismissing Mrs. Fellner's Complaint. Whether this or other litigation such as that being prosecuted against Tri-Union by the California Attorney General results in a decrease in fish consumption, there is no public policy consideration that ought compel the deprivation of an innocent victim of Tri-Union's failure to warn, of her right to seek redress for the harm she sustained as a result of Defendant's wrongful conduct.

Plaintiff submits that there is a stronger public policy in favor of compelling manufacturers and sellers to disclose the known defects of their products, and to warn consumers of the potential risks of such goods. Doing so would provide consumers with the information necessary for making meaningful choices that would enable them to better conduct their affairs, and enable them to better safeguard their lives and health.

Finally, the fact that a can of tuna might be good for you in one way is no reason to shield its manufacturer from liability if that same can of tuna proves harmful in another way. If Defendant's argument is followed to its logical conclusion, it would lead to the evisceration of products liability law. That is not intended as hyperbole – the same argument advanced by the Defendant to shield a tuna manufacturer could just as easily

shield a drug manufacturer or the maker of any product that has some beneficial aspects, from liability for any of that product's harmful aspects. E.g.; the makers of Fen-Phen would have been shielded from liability under Defendant's reasoning, simply because the drug also happened to be "good" in the sense that it helped consumers reduce weight, and thus could be viewed as helpful in the fight against obesity and its attendant health problems. Even if, as happened, Fen-Phen also damaged many of those consumers' heart valves with such alarming frequency as to require an FDA-ordered recall.

## CONCLUSION

Plaintiff's claim should not be dismissed, as Defendant has failed to demonstrate that Plaintiff cannot prove any set of facts in support of the asserted claims that would entitle her to relief. Hishon v. King & Spalding, 467 US 69, 73 (1984). Nor has the Defendant demonstrated that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle h[er] to relief." Conley v. Gibson, 355 US 41, 45-46 (1957). Defendant's contentions regarding the reasonableness of Plaintiff's consumption of Tri-Union tuna have no place in a 12(b)(6) motion. Reasonableness is a question for the jury, and there is no evidence that the danger of mercury in Tri-Union's tuna product was or is a "commonly known danger." Whether the harmful mercury in Tri-Union's tuna product was naturally occurring or not has no bearing on the Defendant's duty to warn of its presence. Finally, compelling public policy consideration counsel against the dismissal of Plaintiff's Complaint and the shielding of Tri-Union from liability for its wrongful acts and omissions. In light of the preceding and all of the above, Defendant's motion for dismissal should be rejected.

Respectfully Submitted,

**EICHEN LEVINSON & CRUTCHLOW, LLP**
Attorneys for the Plaintiffs

Dated: July 06, 2009        By: _____

              Barry R. Eichen