UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CIVIL ACTION NO.: 06-CV-688 (DMC) (MF)

DEBORAH FELLNER, )
Individually and on Behalf of Those )
Similarly Situated, )
 )
       Plaintiffs, )
 )
v. )
 )
TRI-UNION SEAFOODS, L.L.C., )
d/b/a CHICKEN OF THE SEA, )
 )
       Defendant. )

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Kenneth A. Schoen  KS-7180
BONNER KIERNAN TREBACH
 & CROCIATA, LLP
299 Cherry Hill Road, Suite 300
Parsippany, NJ  07054
(973)335-8480
*Attorneys for Defendant*

On the Brief:  John A. Kiernan, Esq.
                Kenneth A. Schoen, Esq.
                Scott H. Goldstein, Esq.

Dockets.Justia.com

# TABLE OF AUTHORITIES

## CASES

*Alcman Servs. Corp. v. Bullock*, 925 F. Supp. 252, 257 (D.N.J. 1996)..................................2

*Pegram v. Herdrich*, 530 U.S. 211, 228 n.8 (2000).............................................................2

*The People ex rel. Edmund G. Brown, Jr. as Attorney General, etc., et al. v. Tri-Union Seafoods, LLC, et al.*
171 Cal.App.4th 1549, 90 Cal.Rptr.3d 644, (Cal. App. 1 Dist., 2009)..........................3, 9

*Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group, Ltd.*
181 F.3d 410, 426 (3d Cir. 1999).............................................................................5

## STATUTES AND REGULATIONS

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 4, *passim*

Fed. R. Evid. 201(b)...........................................................................................5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(NEWARK VICINAGE)

CIVIL ACTION NO.: 06-CV-688 (DMC)

DEBORAH FELLNER,
Individually and on Behalf of Those
Similarly Situated,

        Plaintiffs,

v.

TRI-UNION SEAFOODS, L.L.C.,
d/b/a CHICKEN OF THE SEA,

        Defendant.

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### PRELIMINARY STATEMENT

Plaintiff Deborah Fellner ("plaintiff") has failed to raise any legitimate arguments in opposition to defendant Tri-Union Seafoods, LLC d/b/a Chicken of the Sea's ("Tri-Union") motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Incredibly, in direct response to Tri-Union's overconsumption argument, plaintiff's opposition attempts to materially alter specific facts about the plaintiff's tuna consumption in an attempt to avoid dismissal of the Complaint. The Complaint specifically alleges that "During the period 1999 through 2004, Plaintiff's diet consisted almost exclusively of Tuna Products canned and distributed by the Defendant." Plaintiff, realizing that her Complaint frankly concedes that she overconsumed Tri-Union's tuna products, now, three years after this Complaint was filed, for the first

1

time claims that Tri-Union erroneously interpreted the "poorly drafted" Complaint. Critically, even in response to Tri-Union's original motion to dismiss, filed in 2006, plaintiff never suggested that the Complaint was poorly drafted or that the facts contained and alleged by plaintiff therein were incorrect.[1]

Tri-Union respectfully submits that it has correctly read the Complaint's allegations and they are tantamount to admissions that plaintiff excessively consumed canned tuna during that period of time. Case law and common sense dictate that there is no duty to warn a consumer of the dangers of overconsumption. The defendant owed no duty to warn against the dangers of overconsumption and cannot be liable to plaintiff for injuries that she incurred by abnormally consuming canned tuna "almost exclusively" for

---

[1] Tri-Union notes that Plaintiff filed an Amended Complaint on July 7, 2009, wherein she assumes positions with this Court that are fundamentally contradictory to those she had taken in earlier proceedings before both this Court and the Court of Appeals for the Third Circuit. Specifically, Plaintiff has now lengthened her alleged exposure from the original "1999 to 2004" to "1993 to 2004." Additionally, Plaintiff now alleges that she "consumed approximately one can per day of the Defendant's Chicken of the Sea albacore tuna products." Plaintiff's original Complaint alleged that her "diet consisted almost exclusively of Tuna Products canned and distributed by the Defendant." Both this Court and the Third Circuit relied upon and referred to the facts as alleged by Plaintiff in the original Complaint. Fellner v. Tri-Union Foods, LLC, 539 F.3d 237, 241 (3d Cir. 2008); Fellner v. Tri-Union Foods, LLC, No. 06-CV-0688 (DMC), 2007 WL 87633, at *7 (D.N.J. Jan. 9, 2007) (Cavanaugh, J.).

This is impermissible as it violates the equitable doctrine of judicial estoppel. "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 228 n.8 (2000). Here, Plaintiff successfully convinced the Third Circuit to reverse this Court's entry of dismissal. In doing so, she represented one version of alleged exposure and dietary intake. Now, in an attempt to avoid dismissal on grounds of, inter alia, overconsumption, Plaintiff has improperly reversed direction and changed the underlying factual bases for her Complaint. As this Court has explained in granting dismissal for equitable estoppel: "For the law to countenance this abrupt and shameless shift of positions would give prominence (and substance) to the image that lawyers will take any position, depending on where the money lies, and that litigation is a mere game and not a search for truth." Alcman Servs. Corp. v. Bullock, 925 F. Supp. 252, 257 (D.N.J. 1996). The Court should disregard the Amended Complaint as it violates the equitable doctrine of judicial estoppel.

five years and, therefore, plaintiff's individual claims in the Complaint should be dismissed.

In addition, plaintiff ignores the recent holding by the Court of Appeals of the State of California, First Appellate District, in *The People ex rel. Edmund G. Brown, Jr. as Attorney General, etc., et al. v. Tri-Union Seafoods, LLC, et al.*, 171 Cal.App.4th 1549, 90 Cal.Rptr.3d 644, (Cal. App. 1 Dist., 2009) that methylmercury occurs naturally in tuna, thereby, exempting Tri-Union from California's state warning requirements (Proposition 65).

Plaintiff also submits several studies, articles, pleadings and memoranda in opposition to the motion. However, counsel has never sought or obtained judicial notice of these documents. If judicial notice was sought, it would not likely be obtained because judicial notice is only given to documents or facts not subject to reasonable dispute. The documents that plaintiff submitted do not contain undisputed factual information of which the Court could take judicial notice. Accordingly, these disputed documents should be disregarded by the Court in deciding the motion.

Finally, while plaintiff has disingenuously compared the existence of trace amounts of methylmercury in canned tuna to Fen-Phen and has referred to Tri-Union's tuna as a "source of mercury, which is a bad element that might harm or kill," this hyperbole does not diminish the strong public policy considerations that warrant dismissal of the Complaint, including: (1) limiting the endless litigation against food producers that would result from stretching the duty to warn of overconsumption of food products beyond the boundaries of common sense; and (2) preventing a decrease in fish

3

consumption by the general population at risk for cardiovascular disease who would otherwise benefit from the positive effects of omega-3 fatty acids contained in fish.

In sum, (1) defendant is not liable under New Jersey law for injuries incurred by Plaintiff for abnormal consumption of its product (tuna); (2) the strict liability and breach of warranty claims in Counts I and II must be dismissed as the alleged "harmful compound," methylmercury, occurs naturally in tuna and does not trigger a duty to warn; (3) all remaining counts should be dismissed as there is no duty to warn of a commonly known danger; and (4) compelling public policy considerations necessitate the dismissal of plaintiffs' Complaint. As such, this Court should grant Defendant's motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P 12(b)(6).

# LEGAL ARGUMENT

## POINT ONE

**THE COURT MUST DISREGARD EXHIBITS B THROUGH I SUBMITTED BY PLAINTIFF IN OPPOSITION TO THIS MOTION BECAUSE THE COURT HAS NOT TAKEN JUDICIAL NOTICE OF THESE DOCUMENTS.**

As a general rule, the Court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion, the documents attached thereto as exhibits, and matters of judicial notice in determining its sufficiency. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The Court is not permitted to look at matters outside the record; if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by the express terms of FRCP 12(b), converted into a motion for summary judgment.

Pursuant to Federal Rule of Evidence 201, a litigant must move to have the Court take judicial notice of documents that it seeks to attach to papers submitted on a motion to dismiss. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Federal Rule of Evidence 201(b). A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. See Federal Rule of Evidence 201(b).

Initially, the plaintiff has neither sought nor received judicial notice for several of the exhibits she attaches to her opposition to the instant motion. These articles and documents are not generally known within the territorial jurisdiction of the trial court and their accuracy is in question. As such, these articles annexed as Exhibits C, D and I

should not be considered on the motion, and the facts cited therein should be disregarded. Likewise, other documents, such as Exhibits B, E, F and G, are either litigation pleadings and/or legal opinion letters. These types of documents do not contain undisputed factual information that the Court could take judicial notice of and which have no applicability on this motion.

As such, all of these are not the types of documents of which a Court can be expected to take judicial notice. Therefore, the Court should disregard all of the additional documents submitted by plaintiff in her opposition, excluding the Complaint appended as Exhibit A.

## POINT TWO

**THE COMPLAINT'S ALLEGATIONS WERE CLEAR THREE YEARS AGO AND REMAIN SO NOW. THEREFORE, ACCEPTING PLAINTIFF'S ALLEGATIONS AS TRUE, PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HER VIRTUALLY EXCLUSIVE CONSUMPTION OF TUNA FOR FIVE YEARS CONSTITUTES ABNORMAL OVERCONSUMPTION.**

Plaintiff contends that Tri-Union's argument that it has no duty to warn about the obvious danger of overconsuming a product is a weight of the evidence argument for a jury to decide.

If defendant disputed the allegations in plaintiff's Complaint about plaintiff's tuna product consumption from 1999-2004, this might be a "weight of the evidence" argument. However, for the purposes of this motion, Tri-Union accepts plaintiff's well-pled allegations as true. Tri-Union does not dispute the plaintiff's allegations in her Complaint which state that she consumed tuna to such an excessive degree that her diet was comprised "almost exclusively" of tuna for a period of five years. *See* [Schoen Cert., Exhibit "A" (Complaint, ¶ 7)].

6

Tellingly, plaintiff raises the only objection to her own allegations, claiming that there has been an "erroneous interpretation of the language of the Complaint and that the Complaint was "poorly drafted." This waffling underscores the plaintiff's desperation because she now fully comprehends that the Complaint's allegations lead to no other conclusion except that the plaintiff overconsumed tuna from 1999-2004. Only the Complaint, as pled, is considered in determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Rather, this is nothing more than the plaintiff's counsel disingenuously altering material facts about plaintiff's tuna consumption, which have been significantly relied upon throughout the course of this litigation, in a desperate attempt to save this case.

Plaintiff also, without any documentary support, attempts to argue that the existence of trace amounts of methylmercury within tuna is not commonly known. On the contrary, as argued and demonstrated in Tri-Union's moving papers, it is common knowledge that methylmercury is present in tuna and that excessive consumption of canned tuna containing trace amounts of methylmercury may lead to elevated mercury accumulation. Moreover, despite plaintiff's criticism of the comparison of canned tuna to other food which may contain health risks if overconsumed, the fact remains that normal consumption of canned tuna, has no adverse health risks.

By arguing that canned tuna should contain a warning about the dangers of overconsumption, plaintiff seems to imply that all other foods that may be dangerous, if overconsumed, should contain a warning as well. For example, under plaintiff's theory, a Snickers bar may contain a warning stating that "[O]verconsumption of Snickers bars may lead to diabetes and obesity." Indeed, the inherent risks in overconsuming all of the above-described products are well known and, therefore, there is no duty or need to warn of them.

Since defendant does not dispute the extent and amount of plaintiff's tuna consumption, Tri-Union respectfully submits that plaintiff's tuna consumption from 1999-2004, as described by the Complaint, constitutes overconsumption. Indeed, plaintiff would be hard-pressed to have consumed more tuna during that time period, assuming that her tuna consumption is as alleged in the Complaint. As such, plaintiff's Complaint should be dismissed because Tri-Union has no duty to warn about the obvious danger of overconsuming a product.

## POINT THREE

### PLAINTIFF MISCHARACTERIZES TRI-UNION'S OVERCONSUMPTION ARGUMENT AND ATTEMPTS TO RECAST IT AS A CLAIM THAT THERE IS NO DUTY TO WARN FOR PRODUCTS THAT ARE DANGEROUS ONLY WITH PROLONGED USE.

Plaintiff mischaracterizes Tri-Union's brief in an attempt to recast the overconsumption argument into a claim that New Jersey law does not impose a duty to warn for products that are dangerous only with prolonged use.

Simply put, this is not Tri-Union's argument. Tri-Union's brief in support of this motion does not argue that prolonged use of tuna products is dangerous. On the contrary, it is self-evident that Tri-Union's goal as a company is to encourage consumption of its tuna products by the general public, which has salutary nutritional benefits. Tri-Union's argument about tuna consumption pertains solely to its duty to include warnings on tuna about the possible dangers (if any) of overconsuming its tuna products and it directly addresses plaintiff's allegations about her overconsumption of Tri-Union's tuna products.

As such, the Court should not deny Tri-Union's motion to dismiss because of an argument that was not raised by Tri-Union.

# POINT FOUR

## PLAINTIFF CANNOT STATE A CAUSE OF ACTION FOR BREACH OF WARRANTY AND STRICT LIABILITY AS THE ALLEGED "HARMFUL COMPOUNDS" ARE NATURALLY OCCURRING.

Plaintiff argues that the fact that mercury is "naturally occurring" in tuna has no bearing on Tri-Union's duty to warn. In so arguing, plaintiff ignores the recent California Appellate Court decision in *People ex rel. Brown v. Tri-Union Seafoods, LLC, et al.*, 171 Cal. App. 4th 1549, 90 Cal. Rptr.3d 644, (Cal. App. 1 Dist., 2009), where the First Appellate District affirmed the trial court's ruling that methylmercury is naturally occurring in tuna fish, exempting Tri-Union from California state warning requirements (Proposition 65).

Plaintiff cites no case law imposing a duty to warn, or imposing liability upon a restaurant or other entity producing or serving food for failing to warn about foods that contain naturally-occurring substances which might have deleterious effects. Likewise, plaintiff simply ignores all of the cases cited by Tri-Union from other jurisdictions, where Courts have held that if the injury-producing substance is natural to the preparation of food served, it can be said that it was reasonably expected by its very nature and the food cannot be determined unfit or deceptive. A plaintiff in such a case has no cause of action in strict liability or implied warranty.

Accordingly, given the fact that New Jersey courts have never expressly addressed the issue of whether food manufacturers have a duty to warn about naturally occurring deleterious substances that cannot be removed from foods, Tri-Union respectfully submits that this Court should find that no such duty to warn exists in these instances.

## POINT FIVE

## COMPELLING PUBLIC POLICY CONSIDERATIONS NECESSITATE THE DISMISSAL OF PLAINTIFF'S COMPLAINT

As set forth in Tri-Union's moving papers, there are compelling public policy considerations which necessitate the dismissal of plaintiff's Complaint which include the fact that (1) fish are an excellent source of omega-3 fatty acids which may protect against cardiovascular disease; and (2) this case would serve to distort and extend the duty of a food manufacturer to warn of all potential dangers that could possibly result from overconsumption where such potential dangers would be remote or non-existent under conditions of normal or average use.

Plaintiff attempts to counteract these legitimate public policy considerations by referencing unrealistic, exaggerated potential consequences from the use of Tri-Union tuna related products. Astoundingly, and without any factual basis, plaintiff compares the use of tuna products containing trace amounts of methylmercury to the use of Fen-Phen, which caused damage to the heart valves of many of its users. Moreover, plaintiff recklessly and without any legal or factual support, refers to Tri-Union's tuna as a "source of mercury, which is a bad element that might harm or kill." That plaintiff resorts to this absurd comparison underscores the weakness of plaintiff's entire case.

While plaintiff does not dispute the compelling public policy considerations that merit this case's dismissal, she grossly overreaches by attempting to analogize consumption of canned tuna to the ingesting of Fen-Phen when there is no evidence and scientific data to support this. Accordingly, plaintiff's meritless Complaint should be dismissed.

## CONCLUSION

Based on all of the foregoing reasons set forth above, namely, that (1) defendant is not liable under New Jersey law for injuries incurred by plaintiff for abnormal consumption of its product (tuna); (2) the strict liability and breach of warranty claims in Counts I and II must be dismissed as the alleged "harmful compound," methylmercury, occurs naturally in tuna and does not result from an additive or from an error in the manufacturing process; (3) all remaining counts should be dismissed as there is no duty to warn of a commonly known danger; and (4) compelling public policy considerations necessitate the dismissal of plaintiffs' Complaint. For these reasons, it is clear that dismissal of plaintiff's individual claims under New Jersey state law, with prejudice, is appropriate.

**Respectfully submitted,**
**TRI-UNION SEAFOODS, L.L.C,**
**d/b/a CHICKEN OF THE SEA**
By its attorney,

Kenneth A. Schoen (#KS-7180)
Bonner Kiernan Trebach & Crociata, LLP
299 Cherry Hill Road, Suite 300
Parsippany, NJ 07054
(973) 335-8480

DATED: July 16, 2009