# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DEBORAH FELLNER,           :   CIVIL ACTION NO. 2:06-CV-688 (DMC)-MF

        Plaintiff,         :

v.                         :

TRI-UNION SEAFOODS, L.L.C.,    :
d/b/a CHICKEN OF THE SEA,      :

       Defendant.        :

---

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Kenneth A. Schoen  KS-7180
BONNER KIERNAN TREBACH
 & CROCIATA, LLP
299 Cherry Hill Road, Suite 300
Parsippany, NJ  07054
(973)335-8480
*Attorneys for Defendant*

On the Brief:   John A. Kiernan, Esq.
                 Kenneth A. Schoen, Esq.
                 Scott H. Goldstein, Esq.

Dockets.Justia.com

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT............................................................1

II. ARGUMENT.................................................................................2

   A.  The Amended Complaint Fails To State A Claim To Relief
      That Is Plausible On Its Face...................................................2

   B.  The Court Should Dismiss Plaintiff's Claim Under The New Jersey
      Consumer Fraud Act As It Fails To State A Claim Upon Which
      Relief May Be Granted...........................................................6

      1.  Plaintiff failed to plead her consumer fraud claim with
         the requisite particularity required of such claims.....................6

      2.  The essential nature of Plaintiff's Consumer Fraud Act claim is that
         she suffered personal injuries because Tri-Union failed to warn her of
         the presence of methylmercury in canned albacore tuna fish, which
         is properly brought under the Product Liability Act......................7

   C.  Plaintiff Must Be Judicially Estopped From Presenting Factual
      Bases For Liability In Her Amended Complaint That Are Directly
      Contrary To Those Asserted In Her Original Complaint........................11

   D.  Plaintiff Cannot State A Cause Of Action For Breach Of Warranty
      And Strict Liability As The Alleged "Harmful Compounds" Are
      Naturally Occurring.............................................................14

   E.  The Court Must Disregard Exhibit A Submitted By Plaintiff In
      Opposition To This Motion Because The Court Has Not Taken Judicial
      Notice Of This Document.......................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

### Supreme Court of the United States

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)..................................................2-3

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)..............................................2,3,7

Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999)............................13

### Court of Appeals for the Third Circuit

Fellner v. Tri-Union Foods, L.L.C., 539 F.3d 237 (3d Cir. 2008).................11-12

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007)...................................7

Lum v. Bank of Am., 361 F.3d 217 (3d Cir. 2004).......................................6-7

Montrose Med. Group Participating Sav. Plan v. Bulger,
243 F.3d 773 (3d Cir. 2001)..............................................................12-13

Ryan Operations v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996)...............11-12

S. Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.,
181 F.3d 410 (3d Cir. 1999).................................................................15

### United States District Court for the District of New Jersey

Bronze Shields v. City of Newark, 214 F. Supp. 2d 443 (D.N.J. 2002)............................12

Fellner v. Tri-Union Foods, L.L.C., 2007 WL 87633 (D.N.J. Jan. 9, 2007)........................12

Nafar v. Hollywood Tanning Sys., Inc., 2007 WL 1101440 (D.N.J. Apr. 10, 2007).........8,10-11

Palcsesz v. Midland Mut. Life Ins. Co., 87 F. Supp. 2d 409 (D.N.J. 2000).......................11

Peters v. LG Elecs. USA, Inc., 2007 U.S. Dist. LEXIS 94758 (D.N.J. Dec. 28, 2007).............6

Reiff v. Convergent Techs., 957 F. Supp. 573 (D.N.J.1997).................................2

Visual Interactive Phone Concepts v. Virgin Mobile USA,
2008 WL 4192065 (D.N.J. Sept. 8, 2008)......................................................12

## New Jersey

Campos v. Firestone Tire & Rubber Co., 98 N.J. 198 (1984)..........................................2

Gautam v. DeLuca, 215 N.J. Super. 388 (App. Div. 1987)..........................................1

Goldsworthy v. Browndorf, 2008 WL 140819 (N.J. Super. Ct. App. Div. Jan. 16, 2008).........13

Hoffman v. Hampshire Labs., Inc., 405 N.J. Super. 105 (App. Div. 2009)..........................6

In re Lead Paint Litig., 191 N.J. 405 (2007).....................................8,10,11

James v. Bessemer Processing Co., 155 N.J. 279 (1998)..........................................2

Jurado v. W. Gear Works, 131 N.J. 375 (1993).....................................2

McDarby v. Merck & Co., Inc., 401 N.J. Super. 10 (App. Div. 2008).....................8,9-10,11

Sinclair v. Merck & Co., Inc., 195 N.J. 51 (2008).....................................8-9,11

## Other Jurisdictions

Mexicali Rose v. Superior Court, 822 P.2d 1292 (Cal. 1992)..........................................15

People ex rel. Brown v. Tri-Union Seafoods, LLC,
171 Cal. App. 4th 1549 (1st Dist. 2009).....................................14

## RULES

Fed. R. Civ. P. 8..........................................13

Fed. R. Civ. P. 9..........................................6

## STATUTES

N.J.S.A. 2A:58C-1, et seq..........................................1,4,7-10

N.J.S.A. 56:8-1, et seq..........................................1,6-10

## I. PRELIMINARY STATEMENT

Plaintiff has failed to raise any legitimate arguments in opposition to Defendant Tri-Union Seafoods, LLC d/b/a Chicken of the Sea's ("Tri-Union") motion to dismiss the Amended Complaint. Plaintiff's Amended Complaint purports to allege two causes of action against Tri-Union.[1] She seeks damages under both the New Jersey Products Liability Act, N.J.S.A. 2A:58-C, et seq., (the "PLA"), and the New Jersey Consumer Fraud Act Second, N.J.S.A. 56:8-1 et seq., (the "CFA"). With respect to the claims under the CFA, Plaintiff asserted in her Opposition for the first time that the Amended Complaint seeks damages for economic loss, an assertion that Tri-Union disputes. This Court should dismiss the Amended Complaint for all of the reasons articulated in Tri-Union's moving papers, as well as those contained herein.

First, the Amended Complaint falls short of the pleadings standards recently articulated by the Supreme Court of the United States. Second, Plaintiff continues to ignore the reality that the PLA subsumes her claims under the CFA insofar as her claims focus on her alleged mercury poisoning. Third, this Court should utilize the equitable doctrine of judicial estoppel in response to Plaintiff's sudden, drastic, and contradictory changes of the facts underlying her claims. Fourth, Plaintiff cannot state a cause of action for breach of warranty or strict liability where methlymercury, the alleged "harmful compound," occurs naturally in tuna fish.

---

[1] Insofar as she failed to address the issue in her Opposition to Tri-Union's Motion To Dismiss the Amended Complaint; (See Opp. Br. at 1 (summarizing Amended Complaint as containing two counts against Tri-Union: one under the CFA and one under the PLA).); Plaintiff appears to have rightfully conceded that there is no independent cause of action for punitive damages in New Jersey. Gautam v. DeLuca, 215 N.J. Super. 388, 395-96 (App. Div. 1987). Thus, Tri-Union respectfully requests the Court to dismiss Count III of the Amended Complaint, which purports to assert such a cause of action.

## II.    ARGUMENT

### A.    The Amended Complaint Fails To State A Claim To Relief That Is Plausible On Its Face.

Plaintiff's opposition contends that she has pled more than adequate facts to prove that Tri-Union violated the PLA. A review of the Amended Complaint, however, reveals that it is deficient in that it does not properly set forth the elements of Plaintiff's claims and uses only conclusory statements without any factual enhancement to establish the necessary elements for a *prima facie* case that Tri-Union violated the PLA by failing to warn and/or providing inadequate warnings about the existence of methylmercury in its canned tuna products.

As part of a *prima facie* claim for failure to warn and/or providing inadequate warnings pursuant to the PLA, Plaintiff must sufficiently plead that Tri-Union had a duty to warn. <u>See</u> <u>James v. Bessemer Processing Co.</u>, 155 N.J. 279, 297-98 (1998). Related to this issue is the question of whether the cans of tuna fish contained a patent or latent defect that could result in an objectively foreseeable hazard in the product at issue. <u>See Jurado v. W. Gear Works</u>, 131 N.J. 375, 384-86 (1993). In this case plaintiff failed to allege that Tri Union had a duty to warn "foreseeable users of all hidden or latent dangers that would arise out of a reasonably anticipated use of [their] product[s]." <u>Reiff v. Convergent Techs.</u>, 957 F. Supp. 573, 581 (D.N.J.1997) (citing <u>Campos v. Firestone Tire & Rubber Co.</u>, 98 N.J. 198, 206-07 (1984)).

Applying the three-part process set forth in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1949 (2009), the Amended Complaint is deficient because it does not sufficiently plead that Tri-Union had a duty to warn about the purported dangers of methylmercury in tuna. To plead this cause of action properly, the Amended Complaint must contain more than mere "naked assertions" without any "further factual enhancement." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Critically, the Amended Complaint contains only "naked assertions" without "further

factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusions . . ." See Iqbal, 129 S. Ct. at 1949 (2009). Iqbal's three-part process for evaluating motions to dismiss requires that the Court identify conclusory pleading statements that are not entitled to "the assumption of truth." Id. Indeed, Plaintiff's primary basis for liability is the conclusory allegation that "Defendant was aware that its tuna products contained methylmercury and/or other harmful compounds that could result in mercury poisoning."

The second aspect of the Iqbal pleading evaluation process requires that the Court determine whether the Amended Complaint has sufficient factual allegations to support any legal conclusions present in the Complaint. Id. at 1951. As discussed in Tri-Union's moving papers, the Amended Complaint contains no factual allegations supporting Plaintiff's legal conclusions that Tri-Union's was required to warn about the existence of methylmercury in tuna and/or explaining why methylmercury warnings should be required for canned tuna fish products (or any tuna product). In addition, the Amended Complaint fails to include factual allegations supporting the legal conclusions that Tri-Union's tuna products could foreseeably result in mercury poisoning or that the existence of methylmercury in the canned tuna product posed any hazard to Plaintiff from a reasonably anticipated use of Tri-Union's products. Twombly and Iqbal unequivocally require that the Amended Complaint include such factual support for any conclusions that Plaintiff seeks to draw within her Amended Complaint.

Likewise, even assuming *arguendo* that the Amended Complaint satisfactorily pled facts sufficient to establish that Tri-Union owed a duty to Plaintiff to place a warning for methylmercury on canned tuna products, Plaintiff failed to plead any supporting facts necessary to overcome the rebuttable presumption that no methylmercury warnings are required for canned tuna or setting forth an example of an adequate warning, if the presumption can be overcome.

If there is a duty to warn, in order to establish a cause of action for inadequate warnings or failure to warn, Plaintiff must show that Tri-Union used an inadequate product warning on its canned tuna products. The PLA's standard for an adequate product warning is as follows:

> An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used, or in the case of prescription drugs, taking into account the characteristics of, and the ordinary knowledge common to, the prescribing physician. If the warning or instruction given in connection with a drug or device or food or food additive has been approved or prescribed by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, . . .a rebuttable presumption shall arise that the warning or instruction is adequate product warning

N.J.S.A. 2A:58C-4

In this case, the FDA has opposed the use of warnings with respect to the existence of methylmercury in tuna since the mid-1990's. As early as May 1995, the FDA prepared "FDA Consumer Article," as part of the FDA's Methylmercury Advisory, entitled "Is Mercury in Fish a Safety Concern?" See [Schoen Reply Cert., Exhibit "1"]. Therein, the FDA specifically stated:

> FDA seafood specialists say that **eating a variety of types of fish, the normal pattern of consumption, does not put any one in danger of mercury poisoning. It is when people eat fad diets – frequently eating only one type of food or a particular species of fish – that they put themselves at risk.**

(Emphasis added). Also of importance, the FDA advised that, "[c]onsumption advice is **unnecessary for the top 10 seafood species, making up about 80 percent of the seafood market – canned tuna, shrimp.**" See id. (emphasis added).

On January 12, 2001, the FDA issued an Advisory on Methylmercury in Fish, advising pregnant women, women of childbearing age, nursing mothers and young children against consuming shark, swordfish, king mackerel, and tilefish, but further advising this subpopulation

4

that "seafood can be an important part of a balanced diet for pregnant women and those of childbearing age who may become pregnant. **FDA advises these women to select a variety of other kinds of fish – including shellfish, canned fish,** smaller ocean fish or farm-raised fish ... and that these women can safely eat 12 ounces per week of cooked fish." See [Schoen Reply Cert., Exhibit "2," FDA's Advisory on Methylmercury in Fish, dated Jan. 2001 (emphasis added)

Then, on September 8, 2004, FDA Associate Commissioner William Hubbard prepared a letter outlining the FDA's position against the use of a warning regarding the existence of methylmercury in fish in response to the "Martek Petition," dated November 3, 2003. See [Schoen Reply Cert., Exhibit "3," September 8, 2004 FDA Letter Rejecting Methylmercury Warnings]. In the petition, Martek Biosciences Corporation ("Martek") sought to require warning labels for shark, swordfish, king mackerel and tilefish that included the FDA's "advisory statement suggesting a limited weekly intake for a vulnerable population of pregnant women, women of childbearing age, nursing mothers, and young children." In response, the FDA expressly rejected a warning as suggested by Martek. See id. Consequently, the FDA expressly rejected warnings on fish products regarding the existence of methylmercury.

After the *Martek* issue was resolved, in response to an action commenced by the California Attorney General, the FDA concluded in an August 12, 2005 letter that state laws requiring warnings on tuna products are preempted by federal law. See August 12, 2005 FDA Preemption Letter. Therein, the FDA articulated specific reasons why requiring the tuna companies to comply with Proposition 65 directly conflicted with federal law, and noted that only under exceptional circumstances does the FDA require manufacturers to provide warnings on their labels. *Id.* Specifically, buoyed by its years of research and analysis of methylmercury in tuna, the FDA stated that using advisories rather than explicit warnings remains the preferred

method for advising the public. The FDA believes that state law warnings for methylmercury on tuna products frustrate this long-standing, "carefully considered agency approach." *Id.*

Thus, if Plaintiff seeks to sufficiently plead that Tri-Union either failed to warn about or failed to provide adequate warnings about the existence of methylmercury in its tuna products, Plaintiff must provide supporting facts explaining how she intends to overcome the rebuttable presumption that methlymercury warnings were not required to caution the general public about the existence and/or purported dangers posed by the existence of methylmercury in canned tuna.

**B.     The Court Should Dismiss Plaintiff's Claim Under the New Jersey Consumer Fraud Act As It Fails To State A Claim Upon Which Relief May Be Granted.**

   **1.     Plaintiff failed to plead her consumer fraud claim with the requisite particularity required of such claims.**

Rule 9(b) of the Federal Rules of Civil Procedure requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. "Because a claim under the CFA is essentially a fraud claim, the rule requires that such claims be pled with specificity to the extent practicable." Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009). Plaintiffs seeking to state a claim under the CFA must allege specific facts that, if proven, would establish the following: (1) unlawful conduct by the defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." Peters v. LG Elecs. USA, Inc., No. 07-cv-38 (DMC), 2007 U.S. Dist. LEXIS 94758, at *7-8 (D.N.J. Dec. 28, 2007) (Cavanaugh, J.) (citations omitted). In the Third Circuit, a plaintiff satisfies Rule 9(b)'s pleading requirements by "pleading the date, place or time of the fraud, or through alternative means of

injecting precision and some measure of substantiation into their allegations of fraud." Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (citations & internal quotation marks omitted).[2]

Here, Plaintiff makes nothing more than conclusory allegations in her claim under the CFA. Count II of Amended Complaint contains no facts sufficient to support a claim against Tri-Union – let alone facts sufficient enough to satisfy the higher pleading standards required for a fraud claim. Rather, Plaintiff alleges the various buzz words that trigger liability under the CFA, and concludes by alleging that she has "suffered medical expenses and other ascertainable losses as a result of the Defendant's actions." Claims under the CFA require more than a "formulaic recitation of elements." Twombly, 550 U.S. at 555. Count II of the Amended Complaint is just that – a series of formulaic recitations of the elements necessary to establish liability under the CFA. Accordingly, Plaintiff fails to state a claim against Tri-Union under the CFA on which relief may be granted.

2.     **The essential nature of Plaintiff's Consumer Fraud Act claim is that she suffered personal injuries because Tri-Union failed to warn her of the presence of methylmercury in canned albacore tuna fish, which is properly brought under the Product Liability Act.**

In New Jersey, the sole method of recovery for damages arising out of the use of a product is the PLA. Plaintiff elevates form over substance when she alleges, for the first time, that she is seeking to recover for "monetary loss she has suffered as a result of purchasing Defendant's Tuna Product." (Opp. at 10[3].) However, New Jersey case law is clear that

---

[2] See, e.g., Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (dismissing CFA claim where plaintiff made only "generic references to Home Depot's 'excessive "late" rental fees,' failure to disclose lack of after-hours return facilities or procedures, and false representation that 'vehicle rentals and late fees associated therewith would not accumulate beyond the time at which Plaintiff and class members returned or attempted to return rented vehicles to Home Depot'"). Plaintiff's allegations in the instant action do not rise even to the level deemed insufficient in Frederico.

[3] Plaintiff makes absolutely no reference to this claim in her Amended Complaint, and has never before made such a claim. See supra Part II.B.1

7

Plaintiff's recovery is limited to the PLA. New Jersey courts have repeatedly emphasized that the focus is on the "central focus" or "essential nature of the claims" being brought. In re Lead Paint Litig., 191 N.J. 405, 437 (2007); see Sinclair, v. Merck & Co., Inc., 195 N.J. 51, 66 (2008) (examining "the heart of plaintiff's case"); McDarby v. Merck & Co., Inc., 401 N.J. Super. 10, 97 (App. Div. 2008) (analyzing plaintiff's claim "at its core"). Clearly, the "essential nature" of Plaintiff's allegations against Tri-Union is that over-consumption of canned albacore tuna fish for eleven years has caused her to suffer from "severe mercury poisoning"; (Amend. Compl. at ¶ 7.); and to incur medical expenses. (Amend. Compl. at ¶ 14.) Thus, the true heart or core of Plaintiff's case is her claim of personal injuries arising out of her over-consumption of canned albacore tuna fish – not her out-of-pocket expenses on the actual cans of tuna. (See, e.g., Amend. Compl. at ¶ 9 Furthermore, Plaintiff seeks to avail herself of remedies (treble damages and attorney's fees) that are available under the CFA, but not the PLA. See Nafar v. Hollywood Tanning Systems, Inc., No. 06-CV-3826 (DMC), 2007 WL 1101440, at *4 (D.N.J. Apr. 10, 2007) (Cavanaugh, J.)[4] (noting that if CFA claims "are subsumed by the [PLA], Defendant will no longer face consumer fraud-based treble damages and counsel fees").

In Sinclair, the New Jersey Supreme Court addressed the plaintiffs' claims under both the CFA and PLA arising out of the use of the prescription drug Vioxx. The court concluded that "the PLA is the sole source of remedy for plaintiff's defective product claim; therefore, the [CFA] does not provide an alternative remedy." 195 N.J. at 54. The Sinclair plaintiffs tried to avoid the PLA by couching their claims as CFA claims. As the court noted, though, "the Legislature expressly provided in the PLA that claims for 'harm caused by a product' are

---

[4] Copies of all unpublished decisions are attached herewith as Exhibit 4.

governed by the PLA 'irrespective of the theory underlying the claim.'" Id. at 65 (quoting N.J.S.A. 2A:58C-1b(3)).

> The language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product. *The heart of plaintiff's case is the potential for harm caused by Merck's drug. It is obviously a product liability claim.*

Id. at 66 (emphasis added). The court concluded that the plaintiff's CFA claim did not fall within an exception[5] to the PLA, but rather clearly fell within the scope of the PLA.

The Appellate Division's holding in McDarby is also instructive. The McDarby plaintiffs sued under the PLA and CFA for injuries arising from the use of the prescription drug Vioxx. The trial court awarded compensatory and punitive damages under both the PLA and the CFA, as well as attorney's fees and costs pursuant to the CFA. 401 N.J. Super. at 20. On appeal, Merck argued that the plaintiff's claims that Merck misrepresented Vioxx's safety were not cognizable under the CFA; rather, they could be brought only under the PLA. The Appellate Division agreed, and reversed with regard to awards made pursuant to the CFA. Id. at 95.

In support of its decision, the court found that: "The gravamen of plaintiffs' consumer fraud claim was that Merck marketed Vioxx fully aware of its cardiovascular risk[,] but made misrepresentations, and intentionally suppressed, concealed, or omitted material information [and] failed to be truthful while marketing the drug to prescribing physicians." Id. at 95-96. The court noted that while the plaintiffs asserted "what, in essence, is a claim of failure to warn of dangers inherent in Vioxx cognizable under the PLA," they also claimed entitlement to

---

[5] In Sinclair, the Supreme Court noted that a product liability action is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." 195 N.J. at 62 (quoting N.J.S.A. 2A:58C-1b(3)). "In addition to the exception for breach of an express warranty, the PLA excludes from its reach environmental tort actions." Id. (citing N.J.S.A. 2A:58C-6).

additional damages for economic loss under the CFA "as the result of the employment of Merck of an 'unconscionable commercial practice, deception, fraud . . . or the knowing concealment, suppression, or omission of [a] material fact with intent that others rely upon such concealment, suppression, or omission.'" Id. at 96. However, the Appellate Division held that by enacting the PLA the Legislature had "manifested its intent to replace all pre-existing claims by 'one unified, statutorily defined theory of recovery for harm caused by a product.'" Id. (quoting In re Lead Paint Litig., 191 N.J. at 436).

The court noted that the *"plaintiffs' own arguments make it clear that what they are asserting is, at its core, that Merck failed to warn of dangers from a product of which it had knowledge, resulting in alleged economic harm to them."* Id. at 97 (emphasis added). The court concluded that it could find "no basis, in legislative history, statutory language or Court decisions, to conclude that plaintiffs can maintain separate causes of action under the PLA and the CFA in this case." Id. at 98. Permitting otherwise would, inter alia, "introduc[e] an otherwise unavailable treble-damage remedy for harms resulting from a failure to warn." Id. (citation omitted). The Appellate Division also explained that attorneys' fees are also unavailable under the PLA. Id. at 98. Thus, the Appellate Division reversed the award of damages, fees, and costs under the CFA.

Plaintiff misses the mark when she cites Nafar, 2007 WL 1101440, to support the viability of her claim under the CFA. In Nafar, the plaintiff had purchased monthly tanning memberships from the defendant. The plaintiff subsequently brought suit, alleging, violation of the CFA, fraud, unjust enrichment, breach of warranty, and seeking injunctive relief. The plaintiff claimed that the defendant fraudulently omitted the fact that any exposure to ultraviolet

rays increases the risk of cancer. The defendant moved for judgment on the pleadings, arguing,

inter alia, that the PLA subsumed the plaintiff's claims under the CFA. Id. at *1.

The court in Nafar continually reiterated that the plaintiff was *not* pursuing a claim for

personal injury. See, e.g., id. at *1 ("Nafar disclaims any remedy for personal injuries

suffered[.]"); *4 ("Rather than claiming personal injury damages for 'harm caused by a product,'

Nafar seeks to recover for economic harm . . . ."); *5 ("Here, Nafar is not claiming harm for any

physical injuries she may have suffered from the use of Defendant's tanning machines, as would

be appropriate in a product liability action. Instead, she is claiming monetary harm . . . .").

Here, unlike the plaintiff in Nafar, Plaintiff *is* seeking a remedy for personal injuries she

allegedly suffered as a result of consuming Tri-Union's canned albacore tuna. Plaintiff's claim

under the CFA is similar to those in McDarby, Lead Paint, and Sinclair in that the "core" of the

claim arose under the PLA. Furthermore, to allow Plaintiff to proceed under both the CFA and

PLA under such circumstances would permit to recover treble damages and attorney's fees in a

product liability action "without Legislative authorization for such relief." McDarby, 401 N.J.

Super. at 98. Thus, Plaintiff's sole remedy for such a claim is through the PLA.

C.     **Plaintiff Must Be Judicially Estopped From Presenting Factual Bases For Liability In Her Amended Complaint That Are Directly Contrary To Those Asserted In Her Original Complaint.**

As Tri-Union has argued in its moving papers, Plaintiff has adopted two irreconcilably

different positions. Establishing an inconsistency, however, is only half the inquiry. Palcsesz v.

Midland Mut. Life Ins. Co., 87 F. Supp. 2d 409, 413 (D.N.J. 2000). There must be a

determination as to whether either or both of the inconsistent positions were asserted in bad

faith.[6] Id. (citing Ryan Operations v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir.

---

[6] Both this Court and the Third Circuit accepted and adopted Plaintiff's allegations regarding her
consumption rate and alleged exposure to mercury through Tri-Union' canned tuna. See Fellner v. Tri-

11

1996). New Jersey courts are sometimes willing to excuse inconsistencies asserted by parties where: (1) the parties lacked sufficient knowledge of the statement's truth when making it; (2) a statement is susceptible to more than one interpretation; or (3) a statement contains a legal conclusion, as distinguished from a purely factual inconsistency. (See Mot. To Dismiss at 15-16 & nn. 10-13 (collecting cases).) No such mitigating circumstances exist in this matter to justify the inconsistencies. Plaintiff has not asserted her inconsistent positions in good faith or ignorance. Rather, Plaintiff is now alleging facts differently in what she hopes will better assist her in the prosecution of this lawsuit. Tri-Union implores this Court to reject Plaintiff's spurious claim that the Amended Complaint was necessary to clarify a "poorly drafted Complaint." (Pl. Obj. to Def. Mot. To Dismiss at 3, filed July 6, 2009.)

The sanction of dismissal is appropriate here where Plaintiff has attempted to manipulate the judicial process for her own pecuniary gain. "No lesser sanction would adequately remedy the damage done by Plaintiff's misconduct here." Visual Interactive Phone Concepts v. Virgin Mobile USA, No. 05-2661 (MLC), 2008 WL 4192065 (D.N.J. Sept. 8, 2008) (Cooper, J). "Estoppel in this case is appropriately tailored to prevent [Plaintiff] from exploiting a position which, at no point in these proceedings, [she] had chosen to advance." Bronze Shields v. City of Newark, 214 F. Supp. 2d 443, 450 (D.N.J. 2002).

Furthermore, Tri-Union respectfully suggests that Plaintiff misrepresents the law concerning a party's right to plead inconsistent theories with regard to the equitable doctrine of judicial estoppel. Tri-Union agrees that judicial estoppel does not prevent Plaintiff from

---

Union Seafoods, L.L.C., 539 F.3d 237, 241 (3d Cir. 2008); Fellner v. Tri-Union Seafoods, L.L.C., No. 06-CV-0688 (DMC), 2007 WL 87633, at *1, *7 (D.N.J. Jan. 9, 2007) (Cavanaugh, J.). Cf. Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 782 (3d Cir. 2001) (holding it is not "bad faith to assert contrary positions in different proceedings when initial claim was never accepted or adopted by a court or agency").

pleading alternative theories of liability.[7] Such pleading in the alternative, however, is limited to allegations or defenses raised in the same pleading, i.e., pleading intentional and negligent misconduct in the alternative. Plaintiff has not done that here. Rather, Plaintiff initially alleged that, from "1999 through 2004, her diet consisted almost exclusively of Tuna Products canned and distributed by the Defendant." (Compl. at ¶ 7.) Plaintiff has since modified her consumption history, alleging in her Amended Complaint that, from "1993 through 2004, Plaintiff consumed approximately one can per day of Defendant's Chicken of the Sea albacore tuna products." (Amend. Compl. at ¶ 3.)

In support of this argument, Plaintiff relies on Montrose, 243 F.3d 773, which actually undermines her position. In its analysis, the Third Circuit cites to Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999). In Cleveland, the Supreme Court explained that Rule 8(e)(2) of the Federal Rules of Civil Procedure "recognize[s] that *a person may not be sure in advance upon which legal theory she will succeed*, and so permit[s] parties to 'set forth two or more statements of a claim or defense alternatively or hypothetically' and to 'state as many separate claims and defenses as the party has regardless of consistency." Montrose, 243 F.3d at 782 (emphasis in original) (quoting Cleveland, 526 U.S. at 805 (quoting Fed. R. Civ. P. 8(e)(2))). First, Cleveland contemplates legal theories of liability, not the factual underpinnings thereto. Second, unlike in Cleveland, Plaintiff must have known her tuna consumption history before filing suit. Here, Plaintiff simply attempts to modify the factual basis of the lawsuit. Tri-Union respectfully suggests that the Court must not condone this.

---

[7] See. e.g., Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Goldsworthy v. Browndorf, No. MER-L-2177-04, 2008 WL 140819, at *6 (N.J. Super. App. Div. Jan. 16, 2008) (per curiam) (explaining that "[j]udicial estoppel does not prevent litigants from pleading alternative positions").

With all due deference to Racehorse Haynes; (Pl. Opp. at 12.); Plaintiff incorrectly argues

that she is able to plead contradictory consumption and exposure histories in the alternative.

Rather, she has abandoned the former theory after four years, and is now asserting only the latter.

The Court should not countenance such disregard for the judicial process.

**D.**    **Plaintiff Cannot State A Cause Of Action For Breach Of Warranty And Strict Liability As The Alleged "Harmful Compounds" Are Naturally Occurring.**

Plaintiff's opposition sidesteps Tri-Union's argument that mercury is "naturally

occurring" in fish, including tuna, and therefore Plaintiff should be barred from asserting claims

for strict liability and breach of warranty against Tri-Union.  In so arguing, Plaintiff essentially

ignores the recent California Appellate Court decision in <u>People ex rel. Brown v. Tri-Union</u>

<u>Seafoods, LLC</u>, 171 Cal. App. 4th 1549 (1st Dist., 2009), where the First Appellate District

affirmed the trial court's ruling that methylmercury is naturally occurring in tuna fish, exempting

Tri-Union from California state warning requirements (Proposition 65) except to state, in

conclusory fashion, that it is inapplicable because the finding only applies to the defendant's

liability under the Drinking Water and Toxic Enforcement Act of 1986.

Plaintiff cites no case law imposing a duty to warn, or imposing liability upon a

restaurant or other entity producing or serving food for failing to warn about foods that contain

naturally-occurring substances that might have deleterious effects.  Moreover, Plaintiff appears

to oppose this argument by attempting to apply the reasonable expectation test to this issue as

opposed to the "foreign/natural" test.  Tri-Union respectfully submits that, as a matter of law, it

does not matter whether a "reasonable expectation" or "natural/foreign" analysis is applied, if the

alleged injury-producing substance is natural to the preparation of the food served, it can be said

that it was reasonably expected by its very nature and the food cannot be determined unfit or

deceptive. A plaintiff in such a case has no cause of action in strict liability or implied warranty.

Mexicali Rose v. Superior Court, 822 P.2d 1292, 1303 (Cal. 1992).

Accordingly, given the fact that New Jersey courts have never expressly addressed the issue of whether food manufacturers have a duty to warn about naturally occurring deleterious substances that cannot be removed from foods, Tri-Union respectfully submits that this Court should find that no such duty to warn exists in these instances.

**E.    The Court Must Disregard Exhibit A Submitted By Plaintiff In Opposition To This Motion Because The Court Has Not Taken Judicial Notice Of This Document.**

As a general rule, on a motion to dismiss under Rule 12(b)(6), the Court may consider only the pleading that is attacked, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). Plaintiff has neither sought nor received judicial notice for Exhibit A attached to her opposition to the instant motion. As such, this Court should not consider the article entitled "Can the Tuna: The FDA's Failure to Protect Children From Exposure to Mercury in Albacore 'White' Canned Tuna," annexed as Exhibit A.

For the foregoing reasons, Tri-Union respectfully requests that this Court dismiss the Amended Complaint in its entirety.

DEFENDANT, TRI-UNION SEAFOODS,
L.L.C., d/b/a CHICKEN OF THE SEA

_/s/ Kenneth A. Schoen_
Kenneth A. Schoen (#KS-7180)
kschoen@bktc.net
Bonner Kiernan Trebach & Crociata, LLP
299 Cherry Hill Road, Suite 300
Parsippany, NJ 07054
(973) 335-8480
Counsel for Defendant

## CERTIFICATION

I hereby certify that on this date a copy of foregoing **Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Barry R. Eichen, Esq.
Eichen Levinson & Crutchlow, LLP
40 Ethel Road
Edison, NJ 08817
(732) 777-0100

/s/ Kenneth A. Schoen
Kenneth A. Schoen (#KS-7180)