NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————

|  |  |
|---|---|
| : | |
| : | |
| DEBORAH FELLNER, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Hon. Dennis M. Cavanaugh |
| : | |
| : | **OPINION** |
| TRI-UNION SEAFOODS, L.L.C., d/b/a : | |
| CHICKEN OF THE SEA, : | Civil Action No. 06-CV-0688 (DMC) |
| : | |
| : | |
| Defendant. : | |
| : | |
| : | |

———————————————————

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon motion to dismiss by Tri-Union Seafoods, LLC ("Defendant"). Deborah Fellner ("Plaintiff") asserts claims against Defendant, alleging violations of the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58C-1 *et seq*. and the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq*. for caning and distributing albacore tuna containing harmful mercury compounds, while failing to warn and disclose the harms associated with the mercury contained in its albacore tuna products. Defendant moves to dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6).[1]

      For the reasons stated below, and upon consideration of the parties' submissions, Defendant's motion to dismiss is hereby **granted in part** and **denied in part**.

———————————————————

[1] No oral argument was heard pursuant to RULE 78.

## I. BACKGROUND

Mercury is present in nearly all fish.  See "What You Need to Know About Mercury in Fish and Shellfish," U.S. Dept. of Health and Human Serv. and the United States Envtl. Prot. Agency EPA-823-R-04-005 (March 2004).  Mercury is a naturally occurring element in the environment and is also released into the air through industrial pollution.  Id.  Mercury that falls from the air often accumulates in streams, oceans and other bodies of water.  Id.  Fish absorb the mercury as they feed in these waters.  Id.  As a result, mercury becomes part of the fish meat and cannot be removed.  Id.

The FDA has established tolerance levels of mercury in fish through nutritional guidelines. See FED. FOOD AND DRUG ADMIN. COMPLIANCE POLICY GUIDE, § 540.600 (May, 2005).  The FDA has also noted that "[r]esearch shows that most people's fish consumption does not cause a health concern."  See Backgrounder for the 2004 FDA/EPA Consumer Advisory: What You Need to Know About Mercury in Fish and Shellfish at p. 2 (2004).  Additionally, the FDA states that "[f]ish and shellfish can be an important part of [a recommended] diet."  Id. at 2-3.

Defendant manufactures, processes, tests, cans, markets and sells tuna products.  See Plaintiff's Amended Complaint ("Am. Cmplt.") ¶¶ 5,6.  These products do not contain warnings regarding the presence of mercury contained in said tuna.  Id.  During the period 1993 through 2004, Plaintiff consumed approximately one can per day of Defendant's Chicken of the Sea albacore tuna products.[2]  Id.  Plaintiff contracted severe mercury poisoning and suffered extreme physical and

---

[2] Plaintiff, in her initial complaint asserted that "during the period 1999 through 2004, Plaintiff's diet consisted **almost exclusively** of Tuna Products canned and distributed by the Defendant."  Initial Complaint ¶ 7 (emphasis added).  In contrast, Plaintiff's Amended Complaint alleges that "[d]uring the period 1993 through 2004, Plaintiff consumed approximately one can per day of Defendant's Chicken of the Sea albacore tuna products."  Am. Cmplt. ¶ 3.  Defendant urges that Plaintiff should be judicially estopped from substantially modifying her initial

emotional injuries.  Id.

Plaintiff brings claims under the New Jersey Products Liability Act (Count I), the New Jersey

Consumer Fraud Act (Count II), and for punitive damages (Count III).[3]

In March of 2006, this Court dismissed Plaintiff's claims as preempted by federal regulations.

Specifically, the Court found that the FDA's regulatory approach for dealing with the existence of

mercury in canned tuna preempted Plaintiff's state law failure to warn claims.  The Third Circuit

reversed and remanded the case, holding that the informal actions taken by the FDA (i.e., issuance

of a consumer advisory regarding the risks posed by mercury in fish, and establishing a guideline

regarding mercury concentrations) were insufficient to preempt state regulatory action.  See Fellner

complaint.

Judicial estoppel is a discretionary tool used by Courts to prevent "a party from playing fast and loose with the courts by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding)."  In re Teleglobe Communs. Corp., 493 F.3d 345, 377 (3d Cir. 2007).  Judicial estoppel is typically only appropriate where the party to be estopped convinced a court to "accept [i.e., relied upon] its earlier position."  U.S. v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005) (quoting Montrose Medical v. Bulger, 243 F.3d 773, 778 (3d Cir. 2001)).  Although Plaintiff's allegations as to the quantity/time of her consumption of Defendant's product appear to be significantly different in the two complaints, neither this Court or the Third Circuit has accepted such statements in rendering a decision in this case.  Judicial estoppel, therefore, will not be applied to prevent Plaintiff from relying on her Amended Complaint.

Nonetheless, the Court notes that the changes to the Amended Complaint are of substantial importance, as they directly affect the viability of one of Defendant's affirmative defenses.  See Section III.C.2, infra (discussing Defendant's "over-consumption" argument).  Plaintiff's only explanation for these modifications to her complaint is that the initial complaint was drafted in a "sloppy" manner.  This explanation raises some concern, as the entire complaint consists of five pages—only several lines of which are dedicated to stating the facts forming the basis for Plaintiff's claims.   It seems unlikely to this Court that Plaintiff would be significantly incorrect in reciting these basic and critical facts.

[3]  Plaintiff's Third Count is a claim for "Punitive Damages."  The Court will not address this as an independent claim—it is more accurately characterized as a variety of relief sought, not a cause of action.  See Gautam v. DeLuca, 521 A.2d 1343, 1346-48 (N.J. Super. Ct. App. Div. 1987).  Plaintiff does not dispute this in her Opposition to Defendant's motion.

v. Tri-Union Seafoods, L.L.C., 539 F.3d 237 (3d Cir. 2008).

Defendant again moves to dismiss Plaintiff's case, asking this Court to grant its motion on the pleadings as to all three remaining counts.  In so doing, Defendant also asks this Court to take judicial notice of three documents.[4]

## II.  APPLICABLE LAW

### A.   STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 ( 1984).  In Bell Atlantic Corp. v. Twombly the Supreme Court clarified the Rule 12(b)(6) standard.   550 U.S. 544 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.

---

[4] See, note 8, infra.

Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

**B.    NEW JERSEY PRODUCTS LIABILITY ACT**

In 1987 the Legislature enacted the PLA based on an "urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products." N.J.S.A. 2A:58C-1a.  In so doing, "[t]he Legislature intended … to limit the liability of manufacturers so as to 'balance [] the interests of the public and the individual with a view towards economic reality.'" Zaza v. Marquess & Nell, Inc., 675 A.2d 620, 627 (N.J. 1996) (quoting Shackil v. Lederle Labs., 530 A.2d 1287, 1309 (N.J. 1989) (Shebell, J.A.D., dissenting)).  The New Jersey Supreme Court has observed that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products."  In re Lead Paint Litigation, 924 A.2d 484, 503 (N.J. 2007).  A product liability action is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J.S.A. 2A:58C-1b(3).

A plaintiff can prove that a product was defective in one of three ways; the NJPLA reads, in relevant part:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. 2A:58C-2 (emphasis added).  Therefore, a claim under the NJPLA may be brought alleging a manufacturing defect, a failure to warn of a potential harm or a design defect.  Here, Plaintiff's claim is premised upon Defendant's failure to warn.[5]

In a failure to warn case, "the plaintiff does not allege that the design or structure of the product was defective[, but r]ather, the defect is in the failure to warn unsuspecting users that the product can potentially cause injury." Zaza, 675 A.2d at 632; see Coffman v. Keene Corp., 628 A.2d 710, 715-16 (N.J. 1993).  To prevail on a failure to warn claim, a plaintiff must demonstrate that Defendant had (1) a duty to warn, (2) failed to do so adequately, and (3) the inadequate warning caused injury to the plaintiff.  Toms v. J.C. Penney Co., 2007 U.S. Dist. LEXIS 72659, at *18-20 (D.N.J. Sept. 28, 2007) (citing Zaza v. Marquess & Nell, Inc., 675 A.2d 620 (N.J. 1996)).

An adequate warning under the PLA is one "that a reasonably prudent person in the same or similar circumstances would have provided . . . taking into account the characteristics of, and the ordinary knowledge common to," the intended user.  See N.J. Stat. Ann. § 2A:58C-4.  Accordingly, where a reasonably prudent person, taking due concern of a consumer's knowledge, would find that no warning was necessary, then "no warning need be given." See Masterson, 2007 U.S. Dist. LEXIS 98485, at *30-31 (emphasis added).

_____

[5] Although Plaintiff's sparse Amended Complaint broadly asserts "all claims and causes of action pertaining to the design, manufacture, sale and distribution of the defective tuna products which were not reasonably fit, suitable, or safe for their intended purposes as they were defectively designed, manufactured and/or failed to contain adequate warnings and/or instructions," the Court will treat her claim under the PLA as one for "failure to warn."  The mere 4 statements outlining the conduct that forms the basis for Plaintiff's claim indicates that Plaintiff's claim concerns the absence/inadequacy of Defendant's products labels.  See Am. Cmplt. ¶¶ 3-6.  Moreover, in her Brief in Opposition to this motion to dismiss, Plaintiff characterizes her claim as one based upon Defendant's "can[n]ing and distributing albacore tuna containing harmful mercury compounds, yet failing to warn and disclose that its products contain mercury compounds, and the harms associated with its albacore products." Pl. Brief at 1.

C.    NEW JERSEY CONSUMER FRAUD ACT

The objective of the CFA is to protect consumers from seller's wrongful conduct and fraudulent practices. See Sprenger v. Trout, 866 A.2d 1035, 1044-45 (N.J. Super. Ct. App. Div. 2005).  To maintain a claim under the CFA plaintiff must show:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is cleared to be unlawful practice.

N.J. Stat. Ann. § 56:8-2.

The CFA provides for a unique set of remedies, which are different from those afforded plaintiff under the PLA.  When a Plaintiff prevails in an action under the CFA, "the court shall, in addition to any other appropriate legal or equitable relief, award threefold damages sustained by any person in interest."  N.J. Stat. Ann. 56:8-19.  Additionally, "[i]n all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."  Id.

### III.  DISCUSSION

Plaintiff alleges that Defendant's tuna product was defective because Tri-Union failed to warn consumers as to the presence of mercury in their product.  As to her claim under the CFA, Plaintiff alleges that she suffered a monetary loss due to the purchasing of the tuna product and that she would not have purchased Defendant's tuna product if she had known that it contained unsafe levels of methylmercury.

Defendant moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6), on the grounds

that: **(A)** Plaintiff's claims under the CFA are subsumed by her PLA claims; **(B)** Plaintiff has failed to state her claims under the CFA and PLA with sufficient particularity; **(C)** Plaintiff cannot maintain a claim under the PLA, as Defendant had no duty to warn; and **(D)** public policy considerations warrant dismissal of the Amended Complaint.  The Court will address each argument advanced by Defendant in turn.

### A.    PLAINTIFF'S CLAIMS UNDER THE CFA ARE SUBSUMED BY THE PLA

Defendant argues that Plaintiff's CFA claims are subsumed by the PLA.  Defendant asserts that the PLA was intentionally promulgated to require all products liability claims to be brought as one cause of action, including common law tort claims as well as claims based upon fraud.  Plaintiff responds that, here, she may properly assert claims under both the PLA and the CFA because she is seeking redress for two distinct wrongs—damages for personal injury (under the PLA), and reimbursement for the economic loss resulting from her continually purchasing Defendant's product for eleven years (under the CFA).  Plaintiff, in effect, argues that the economic damages do not result from a harm **caused by the product** (in contrast with her physical/mental damages), and therefore are not covered by the PLA.

The Court agrees with Defendant, and finds that Plaintiff's CFA claims are subsumed by the PLA.

The "PLA applies to every product liability action filed on or after the date of its enactment, July 22, 1987."  Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 515-16 (D.N.J. 2002) (citing Tirrell v. Navistar Int'l, Inc., 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 1991), cert. denied, 591 A.2d 166 (N.J. 1991)).  As the New Jersey Supreme Court explained in Sinclair v. Merck & Co.,

Inc., 948 A.2d 587, 595 (N.J. 2008), "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." The Court went on to explain that although Plaintiff was bringing claims under the CFA and PLA, the "heart of plaintiffs' case is the potential for harm caused by [the product, i.e.] a product liability claim" and "[c]onsequently, plaintiffs may not maintain a CFA claim." Id. at 596; New Hope Pipe Liners, LLC v. Composites One, LCC, 2009 U.S. Dist. LEXIS, at *7-8 (D.N.J. Nov. 30, 2009) ("[I]f the facts of a case suggest that the claim is about defective manufacture, flawed product design, or failure to give an adequate warning, then the PLA governs and the other claims are subsumed."). For example, as a court in this District has recently explained, "if a seller or manufacturer fails to warn a buyer about a product's adverse effects, the buyer's lawsuit must be brought as a PLA defective warning case, not as a fraud case alleging a material omission." New Hope Pipe Liners, 2009 U.S. Dist. LEXIS, at *7-8.

The fact that Plaintiff, here, seeks economic damages to reimburse her for the cost of the product (in addition to personal injury damages) does not change the fact that this is, in essence, a product liabilities claim. See McDarby v. Merck & Co., Inc., 949 A.2d 223, 262 (N.J. Super. Ct. App. Div. 2008) (emphasizing that the PLA's definition of "harm" covers the economic harm involved).[6] Indeed, the McDarby Court observed that recognizing a claim "such as that espoused by

---

[6] As the Sinclair court explained,

[the] language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product. The heart of plaintiffs' case is the potential for harm caused by Merck's drug. It is obviously a product liability claim. Plaintiffs' CFA claim does not fall within an exception to the PLA, but rather clearly falls within its scope. Consequently, plaintiffs may not maintain a CFA claim.

948 A.2d at 596.

plaintiffs pursuant to the CFA—a cause of action that likely would be available to most product liability plaintiffs [also] claiming a failure to warn" would permit the vast majority of Plaintiffs to assert claims under both the CFA and PLA.  Id. at 278.  This cannot be the correct reading of the two laws, as the PLA was intended to unify products liabilities causes of action into a single claim. Moreover, plaintiffs would be able to benefit from provisions contained in the CFA despite the fact that such provisions were intentionally not included in the PLA.  Id. at 277-78.

The Court finds that Plaintiff's claims under the CFA are subsumed by the PLA.

### B.    THE ADEQUACY OF PLAINTIFF'S PLEADINGS

Defendant asserts that Plaintiff's pleadings are insufficient to maintain her claims under the PLA.[7]   At this procedural posture, this Court cannot agree that dismissal is appropriate.

In Plaintiff's Amended Complaint, she alleges that during the period from 1993 to 2004, she consumed approximately one can of the defendant's Chicken of the Sea albacore tuna product a day. She further alleges that Defendant was aware that these tuna products contained methylmercury, a harmful compound that could result in mercury poisoning.  Finally, she asserts that Defendant canned and distributed its tuna product without any mercury warning, nor did it adequately disclose the harmful effects of such compounds.

Defendant responds that these assertions do not constitute adequate pleadings under 12(b)(6). Defendants argues that Plaintiff (1) has not plead the underlying factual basis for her assertion that Defendant owed a duty to Plaintiff, and (2) even if the complaint does properly indicate a duty owed

---

[7] Defendant asserts that Plaintiff's claims under the CFA—which are subject to the heightened pleadings requirements of Rule 9(b)—are similarly insufficiently plead.  As discussed above, see section III.A supra, this Court finds that Plaintiff's claims under the CFA are subsumed by her PLA claim.   Accordingly, the Court need not consider whether Plaintiff's pleadings under the CFA meet the heightened pleadings requirements of Rule 9(b).

to Plaintiff, Plaintiff has not plead additional facts explaining how she can overcome New Jersey law's rebuttable presumption that warning labels were not required.  Although Plaintiff's pleadings are admittedly minimal, the Court finds them sufficient to state a claim under the PLA.

First, Defendant argues that Plaintiff did not plead facts sufficient to "establish that the defendant had a duty to warn."  See Toms, 2007 U.S. Dist. LEXIS 72659, at *18-20 (noting that a plaintiff cannot proceed on a failure to warn claim without establishing a duty to warn (citing Zaza, 675 A.2d 620)).  To establish such a duty, Plaintiff must demonstrate that Defendant (or those within the relevant industry) had "knowledge of the harmful effects of a product," and such knowledge may be "imputed to a manufacturer on a showing that knowledge of the defect existed within the relevant industry."  Id. at *20; James v. Bessemer Processing Co., 714 A.2d 898, 907-08 (1998).  Plaintiff's assertion that Defendant "was aware that its tuna products contained methylmercury and/or other harmful compounds that could result in mercury poisoning," is a sufficient assertion of Defendant's knowledge.  See, e.g., D'Alessandro v. Bugler Tobacco Co., 2006 U.S. Dist. LEXIS 89761, at *12 (D.N.J. Dec. 7, 2006) ("Plaintiff's Complaint is sufficient at this stage [as t]he Court cannot say that it would be impossible for Plaintiff to show that JMI was aware since December 2001 of the harm ETS causes.").  The Court finds that Plaintiff has sufficiently plead facts that would give rise to a duty to warn.

Second, Defendant argues that—even assuming Plaintiff has pled facts sufficient to establish that Defendant had a duty to warn—Plaintiff must also plead facts "explaining how she can overcome the rebuttable presumption that warning labels were not required," as such a presumption arises where a company is in compliance with FDA requirements.  See McDarby, 949 A.2d at 255 (observing that N.J. Stat. Ann. § 2A:58C-4 creates a "rebuttable presumption of adequacy" of the

company's original warnings when the warnings are approved by the FDA, and finding that the

presumption can only be overcome by "substantial evidence").  Assuming that Defendant was in

compliance with FDA regulations (and that this creates a rebuttable presumption of adequacy of its

tuna labeling),[8] then the evidentiary burden shifts to Plaintiff to rebut the presumption that the

product label was adequate.   The burden is a high one—if Defendant is in compliance with FDA

regulations, a plaintiff must make a strong showing to rebut the adequacy of the labels (or in this

---

[8] Defendant's ask this Court to take judicial notice of several documents in an effort to
establish this presumption.  Under Federal Rule of Evidence 201, courts can judicially notice
public records.  Lum v. Bank of America, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).  Defendant
requests that the Court take notice of:

(i) Foulke J.E. "Mercury in Fish: A Cause for Concern," FDA Consumer Magazine
(September 1994);

(ii) US Food and Drug Administration, FDA Announces Advisory On
Methylmercury In Fish, FDA Talk Paper T04-01 (Jan. 12, 2001), available at
http://www.fda.gov/OHRMS/DOCKETS/ac/02/briefing/3872_Advisory%205.pdf (last
visited Jan. 3, 2010);

(iii) Letter Responding to Health Claim Petition dated November 3, 2003 (Martek Petition):
Omega-3 Fatty Acids and Reduced Risk of Coronary Heart Disease (letter from William
K. Hubbard, dated September 8, 2004)

The Court will take judicial notice of all three documents, "not for the truth of [their] contents,
but rather as evidence of the information provided by the federal government" to individuals and
industry participants.  See Anspach v. City of Philadelphia, 503 F.3d 256, 273 n.11 (3d Cir.
2007) (taking judicial notice of the Commissioner of the Food and Drug Administration's
"announcement regarding the safety and efficacy of oral contraceptives for use as emergency
contraception is a document published in the Federal Register" noting that "it is therefore a
public record of which we may take judicial notice[; and considering it], not for the truth of its
contents, but rather as evidence of the information provided by the federal government to
healthcare providers regarding the purpose and effect of the emergency contraception regimen.");
Lamers Dairy Inc. v. USDA, 379 F.3d 466, 471 n.8 (7th Cir. 2004) ("This court may take judicial
notice of reports of administrative bodies."); In re Wellbutrin SR/Zyban Antitrust Litigation, 281
F. Supp.2d 751, 754 (E.D.Pa. 2003) (taking judicial notice of FDA report posted on the official
FDA website); In re Vertex Pharms., Inc., Sec. Litig., 357 F. Supp. 2d 343, 352 n.4 (D. Mass.
2005) (noticing FDA policy).  These documents are publically available—the Court was able to
easily obtain such documents from a cursory internet search.

case, to show that the absence of labels was unlawful).  See Bailey v. Wyeth, Inc., 2008 N.J. Super.

Unpub. LEXIS 3004, at *52-60 (July 11, 2008) ("The New Jersey Legislature went further than those

in other states and accorded deference to the FDA's determination of appropriate labeling . . . by

including a rebuttable presumption in the PLA").  This additional burden notwithstanding, a

defendant's compliance with FDA regulations is not conclusive, and in the appropriate

circumstances the presumption can be overcome.  See McDarby, 949 A.2d at 252; Perez v. Wyeth

Lab., 734 A.2d 1245, 1251 (N.J. 1999); see also Campagna v. Am. Cyanamid Co., 767 A.2d 996,

1003-04 (N.J. Super. Ct. App. Div. 2001).

        The question here is not whether Plaintiff will ultimately overcome the presumption created

by N.J. Stat. Ann. § 2A:58C-4, but rather, it is whether she has sufficiently stated a claim.  The Court

cannot determine on this motion to dismiss that Plaintiff will ultimately be incapable of rebutting

such a presumption.  See Perez, 734 A.2d at 1249 (noting that plaintiff was permitted "to provide

expert testimony to rebut the statutory presumption under N.J.S.A. 2A:58C-4, that the manufacturer's

warning is adequate when it has been approved by the FDA."); Campagna, 767 A.2d at 1003-04

(determining that plaintiffs may present competent evidential materials, e.g., deposition testimony

and sworn expert reports, that when viewed in the light most favorable to them, could rebut the

presumption that defendant's warning on its package insert was adequate under N.J. Stat. Ann. §

2A:58C).  Plaintiff alleges in her complaint that Defendant "conceal[ed], suppress[ed], omitt[ed],

and/or fail[ed] to disclose material information regarding the presence of methylmercury and/or other

harmful compounds in its Tuna Products," Am. Cmplt ¶ 10, and that it made "false and misleading

representations" with respect to its tuna products.  Id. ¶ 12.  If these allegations are accurate, and the

Court accepts them as such for the purpose of this motion, then Plaintiff could potentially rebut the

statutory presumption of its warning's adequacy.  See, e.g., Perez, 734 A.2d at 1251; Feldman v. Lederle Lab., 592 A.2d 1176, 1197 (N.J. 1991), cert. denied, 505 U.S. 1219 (1992).

Although Plaintiff's pleadings are minimal, they are sufficient to support an inference that she has a plausible claim for failure to warn.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); New Hope Pipe Liners, 2009 U.S. Dist. LEXIS, at *13-16 (finding that while "Plaintiff's allegations regarding the PLA claim are thin" the allegations were sufficient to give rise to the inference "that the product was not fit for its intended purpose . . . [as a result of] a manufacturing defect, a defective warning, or a defective design.").  At this stage, Plaintiff may proceed on her claim for failure to warn.

### C.  PLA - FAILURE TO WARN CLAIMS

Defendant alternatively argues that Plaintiff's failure to warn claim must be dismissed because she cannot establish the duty element of such a claim.  More specifically, Defendant argues that it has no duty to warn consumers about the potential dangers of mercury in its tuna products.

The PLA imposes on a manufacturer a duty to all users of its product to warn of the risks attendant to the product's foreseeable uses.  See N.J. Stat. Ann. § 2A:58C-2; Toms, 2007 U.S. Dist. LEXIS 72659, at *18-20 (citing Zaza, 675 A.2d 620 (N.J. 1996) (noting that a plaintiff must establish a duty to warn to prevail on a failure to warn claim).  In a warnings case, the manufacturer's conduct

> should be measured by knowledge at the time the manufacturer distributed the product. Did the defendant know or should he have known, of the danger, given the scientific, technological, and other information available when the product was distributed; or in other words, did he have actual or constructive knowledge of the danger?

Feldman v. Lederle Lab., 479 A.2d 374, 386 (N.J. 1984); see Masterson, 2007 U.S. Dist. LEXIS

98485, at *27-29.

Defendant argues that, under the circumstances here, it was under no duty to warn because: (1) the dangers of methylmercury are common knowledge to consumers; (2) plaintiff over-consumed the product; and, (3) the substance is naturally occurring.[9]  For the reasons stated below, the Court will deny Defendant's motion to dismiss on these grounds.

      1.  <u>Common Knowledge</u>

Defendant argues that there is no duty to warn about dangers that are common knowledge, and that the "obviousness" of a danger can operate as a defense to a failure to warn claim.  The Court, however, cannot determined at this stage that it is obvious that Defendant's tuna contains methylmercury in quantities sufficient to cause harm.  Accordingly, Defendant's motion to dismiss is denied.

An adequate warning under the PLA is one "that a reasonably prudent person in the same or similar circumstances would have provided . . . taking into account the characteristics of, and the ordinary knowledge common to," the intended user.  <u>See</u> N.J. Stat. Ann. § 2A:58C-4.  Accordingly, where a reasonably prudent person, taking **due concern of a consumer's knowledge**, would find

---

[9] Defendant advances the "naturally occurring" argument in support of its contention that Plaintiff's strict liability and breach of warranty claims must be dismissed.  However, as a "product liability action" under the NJPLA encompasses "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim," N.J. Stat. Ann. § 2A:58C-8, the Court need not consider these theories separately.  Accordingly, we will treat Defendant's "naturally occurring" argument with respect to Plaintiff's failure to warn claims generally, and not as to any particular theory (e.g., negligence, strict liability, warranty, etc.).  <u>Tirrell v. Navistart Intern., Inc.</u>, 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 1991) ("Since a product liability action encompasses "**any claim** or action brought by a claimant for harm caused by a product," and section 2 describes the sole method of proof, namely that recognized for strict liability claims, it is clear that common-law actions for negligence or breach of warranties (except express warranties) are subsumed within the new statutory cause of action.") (emphasis added).

that no warning was necessary, then "no warning need be given."  See Masterson, 2007 U.S. Dist.

LEXIS 98485, at *30-31 (emphasis added).

Here, the degree of knowledge that a typical consumer possesses regarding the danger is a

question that cannot be resolved on the pleadings.

It is true, as Defendant asserts, that Courts consider whether a product's potential harm is

obvious or part of the community's common knowledge in assessing whether there is a duty to warn.

See Mathews v. Univ. Loft. Co., 903 A.2d 1120, 1126 (N.J. Sup. Ct. App. Div. 2006), cert. denied,

911 A.2d 69 (2006) (finding that the danger of falling from bed is open and obvious, and there is no

need to warn); Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 531-34, 540-43 (S.D.N.Y. 2003)

(finding that a fast food restaurant has no duty to warn that fried foods can lead to weight gain);

Joseph E. Seagram & Sons, Inc. v. McGuire, 814 S.W.2d 385, 388 (Tex. 1991) (noting that the

dangers of "prolonged and excessive consumption of alcoholic beverages is within the ordinary

knowledge common to the community").  Such a determination, however, is typically an issue of fact

that is not appropriately resolved on the pleadings.  See Cipollone v. Liggett Group, Inc., 893 F.2d

541 (3d Cir. 1990) (holding that whether the dangerous characteristics of cigarettes are known to the

average consumer is an issue of fact for the jury); Whitehead v. St. Joe Lead Co., 729 F.2d 238 (3d

Cir. 1984) (the levels at which lead exposure becomes dangerous are not generally known, but

general public knowledge of danger is relevant to the risk-utility injury); Henning v. Casa Dibertacci,

Inc., 2007 N.J. Super. LEXIS 1391, at *11-12 (N.J. Super May 21, 2007)  (unpublished) (noting that

the obviousness of a danger is often presented to a jury); Rice v. Kawasaki Heavy Indus., Ltd., 2008

U.S. Dist. LEXIS 83659 (E.D.N.Y. Oct. 17, 2008) (finding that the obviousness of the dangers of

a product could not be determined at the pleadings stage); Liriano v. Hobart Corp., 700 N.E.2d 303,

-16-

308-09 (N.Y. 1998) (determining whether a danger is open and obvious is usually a jury question unless only one conclusion may be drawn from the established facts)**.**[10]

As the above-cited cases indicate, although courts consider the level of "consumer's knowledge" to determine whether a duty to warn exists, see Mathews, 903 A.2d at 1126; Masterson, 2007 U.S. Dist. LEXIS 98485, at *30-31; N.J. Stat. Ann. § 2A:58C-4, such a determination generally cannot be made at this stage of the proceedings.[11]

### 2. Plaintiff's Consumption of the Product

Defendant asserts that Plaintiff's "over-consumption" of tuna fish products in "abnormal" quantities relieves it of its duty to warn.  In essence, it appears that Defendant asserts that Plaintiff misused the product, and thus the danger caused by such misuse was unforeseeable to Defendant.

New Jersey law places on manufacturers a duty to warn "foreseeable users of all hidden or latent dangers that would arise out of a reasonably anticipated use of [their] product[s]."  Campos v. Firestone Tire & Rubber Co., 485 A.2d 305, 309-10 (N.J 1984).  Where a use is entirely unforeseeable, the manufacturer may not be  under a duty to warn.  See Zaza v. Marquess & Nell, Inc., 675 A.2d 620, 632-33 (N.J. 1996); Jurado v. Western Gear Works, 619 A.2d 1312, 1318-19 (N.J. 1993) (noting that product misuse theoretically could relate to the existence of a (i) duty to

---

[10] Contrary to Defendant's assertion, the fact that this Court previously took judicial notice of several public document regarding the danger of methylmercury in fish does not itself establish that such dangers were "commonly known."

[11] Where a danger is overwhelmingly obvious, there may be no duty as a matter of law. See Campos v. Firestone Tire & Rubber Co., 485 A.2d 305 (1984) (finding that manufacturers have no duty to warn of obvious dangers which are "so basic to the functioning or purpose of the product–for example, the fact that a match will burn–that a warning would serve no useful purpose."); Vallillo v. Muskin Corp., 514 A.2d 528, 531 n.4 (N.J. Ct. App. Div. 1986); Henning, 2007 N.J. Super. LEXIS 1391, at *9.  However, this Court does not find that to be the case under the circumstances here.

provide a warning, (ii) the issue of causation, or (iii) the issue of comparative fault.);  Bowman v.

Parker Hannifin Corp., 2005 U.S. Dist. LEXIS 37180, at *15 (D.N.J. July 6, 2005) (determining, on

summary judgment, whether a use was foreseeable); Liriano, 700 N.E.2d at 305 (collecting cases);

JAMES A. HENDERSON, JR. AND AARON D. TWERSKI, PRODUCTS LIABILITY PROBLEMS AND PROCESS

669 (2d ed. 1992).   Here, however, the Court cannot conclude that the quantity of tuna consumed

by Plaintiff (a can a day according to Plaintiff's Amended Complaint) was so abnormal to convince

the Court that her use of the product was entirely unforeseeable.

Under these circumstances, whether Plaintiff "misused" the product through her alleged over-

consumption of the product is a question of fact.  See, e.g., Jurado, 619 A.2d at 1318-19; Tober v.

Graco Children's Prods., 2004 U.S. Dist. LEXIS 18254, at *25 (S.D. Ind. July 28, 2004) (finding that

"[f]oreseeable use and misuse are typically questions of fact for the jury to decide," and that the

Defendant bears the burden of showing that plaintiff "misused the product in an unforeseeable

manner."); Beneway v. Superwinch, Inc., 216 F. Supp. 2d 24, 2002 U.S. Dist. LEXIS 16126

(N.D.N.Y 2002) ("[T]here is a question of fact as to whether lifting objects overhead was a

reasonably foreseeable use of the winch.").   Taking Plaintiff's allegations in her Amended Complaint

as true (i.e., that she consumed one can per day during the relevant period),[12] the Court cannot

determine that she necessarily "misused" the product.   Moreover, if her level of consumption does

constitute a misuse, the Court still must determine whether such misuse was unforeseeable.  See

Jurado, 619 A.2d at 1318.

_____

[12] As noted above, Plaintiff's allegations as to the quantity of her tuna consumption were
significantly inconsistent in her two complaints.   The time period during which her alleged
consumption of Defendant's product varied widely as well.   See note 2, supra.   The Court,
however, accepts Plaintiff's Amended Complaint as true for the purposes of this motion.

In short, Plaintiff's level of consumption may be relevant in determining whether Defendant had and/or breached a duty to warn.[13]   Nonetheless, this consideration requires underlying factual findings that cannot be resolved on this motion to dismiss for failure to state a claim.

### 3. Naturally Occurring Substance

Defendant asserts that Plaintiff cannot maintain her failure to warn claims because the harmful substance (i.e., mercury) occurs naturally in the product.[14]

Defendant's argument is an overstatement.   The fact that mercury is naturally occurring may be relevant in assessing whether a reasonably prudent person, taking due concern of a consumer's knowledge, would find that a warning was necessary.   See, section III.C.1, supra; see also Masterson, 2007 U.S. Dist. LEXIS 98485, at *30-31.[15]   This fact, however, does not per se relieve Defendant

---

[13] Plaintiff's level of consumption may also prove highly relevant to the issue of causation, which is not addressed at this stage.   See Jurado, 619 A.2d at 1318-19; HENDERSON AND TWERSKI, PRODUCTS LIABILITY PROBLEMS AND PROCESS 669.

[14] Defendant actually asserts that the fact that mercury is naturally occurring defeats Plaintiff's **breach of warranty and strict liability claims**.   As discussed above, all product liability claims, regardless of the theory underlying Plaintiff's claim (e.g., strict liability, warranty, etc.), are considered under the PLA.   The Court will, therefore, consider this argument with respect to Plaintiff's failure to warn claim more generally.

[15] Defendants cite a number of cases for the proposition that when a substance is naturally occurring in a food, Plaintiffs have been unable to recover damages as a result of injuries caused by such a substance.   See, e.g., Porteous v. St. Ann's Café & Deli, 713 So. 2d 454, 458 (La. 1998) (observing that Customer should have been aware of—and alert to the possibility—that a pearl could have been found within the oyster); Ex parte Morrison's Cafeteria of Montgomery, Inc. v. Haddox, 431 So. 2d 975, 979 (Ala. 1983) (finding that plaintiff should have expected the possibility that a fish filet contained bones); Koperwas v. Publix Supermarkets, Inc., 534 So. 2d 872, 873 (Fla. Dist. Ct. App. 1988) ("An occasional piece of clam shell in a bowl of clam chowder is so well known to a consumer of such product that we can say the consumer can reasonably anticipate and guard against it.").   These cases, however, did not find that the "naturalness" of the harmful substance acted as a complete defense to liability—rather, they considered it as a factor in assessing the conduct of the buyer and seller.   Moreover, these cases were not decided on a motion to dismiss for failure to state a claim.

of any and all duties to potential plaintiffs.

*  *  *  *  *

The existence of a duty depends on whether (1) the dangers of the product were obvious, and (2) Plaintiff's use was foreseeable. These are both issues that generally require factual determinations. See Rice, 2008 U.S. Dist. LEXIS 83659, at *31-32 (finding that the obviousness of the dangers of a product could not be determined at the pleadings stage); D'Alessandro, 2006 U.S. Dist. LEXIS 89761, at *12 (denying defendant's motion to dismiss, noting that "[a]dequacy [of a warning] is a question of fact"); Port Auth., 189 F.3d at 315 (3d Cir. 1999) ("objective foreseeablity" is "generally a matter to be determined by a jury."). Accordingly, the Court cannot find, on this motion to dismiss, that Defendant is under no duty to warn under the NJPLA.[16]

### F.   PUBLIC POLICY CONSIDERATIONS

Defendant argues that policy considerations warrant dismissal of Plaintiff's complaint. First, Defendant argues that permitting Plaintiff's claim to proceed will reduce the consumption of healthy quantities of fish. There is, however, no indication that warning labels would cause people to cease consuming fish at healthy levels.

Next, Defendant asserts that permitting Plaintiff's claim to proceed would impermissibly expand the duty to warn on food manufacturers. Defendant asserts that permitting Plaintiff to proceed here, would in turn require vendors selling hot dogs to be under a duty to warn of nitrates, and candy could require a diabetes warning. Defendant mischaracterizes the implications of this decision. As an initial matter, the Court is not prescribing any new duty on manufacturers or

---

[16] The Court notes that in certain cases where the harm ultimately suffered was entirely unforeseeable, it is true that courts in New Jersey have held that no duty existed as a matter of law. See note 11, supra.

vendors.  In fact, the Court specifically finds that it has insufficient facts before it to determine whether a duty exists under the circumstances here.  Moreover, Plaintiff's case is clearly distinguishable from those cited by Defendant, as such foods (i.e., hot dogs and candy) are not widely believed to be healthy and promoted as having significant nutritional value.

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **granted in part** and **denied in part**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          April   13  , 2010
Original:     Clerk's Office
cc:             All Counsel of Record
                 The Honorable Mark Falk, U.S.M.J.
                 File